# CHARLESTON.

## DUNBRACK v. NEALL.

Submitted September 9, 1901.     Decided April 1, 1904.

1. INSURANCE POLICY—*Beneficiary.*

    By verbal agreement N. sold to D. certain real estate on March 28, 1896, for $2,500, but the contract was not completed by the payment of $625, cash payment and execution and delivery of the deed from N. to D. and deed of trust by D. to J. S. N., trustee, to secure the deferred payments aggregating $1,875 until June 29, 1896, the deeds bearing the first named date. On the 4th day of June, 1896, N. took an insurance policy on the buildings in her own name for $2,000, and paid the premium thereon; after the completion of the contract N. offered to assign to D the insurance policy upon repayment to her by D. of the premium, which D. refused to do; N. then assigned the same with the assent of the insuring company to D. and the said company endorsed on the policy, "This policy is hereby transferred and assigned to A. C. Dunbrack with loss, if any, payable to J. S. Neall, trustee for Mary A. Neall, as his interest may appear," which policy was held by J. S. N., trustee. *Held:* Said insurance was for the sole benefit of N., and D. had no interest in said policy. (p. 575.)

2. INSURANCE POLICY—*Creditor.*

    Where a creditor secured by trust deed procures insurance on the trust property for his own benefit and the premium was paid out of his own money, the trust debtor cannot require the creditor to account to him for money received on account of such insurance. (p. 575. )

Appeal from Circuit Court, Tucker County.

Bill by R. C. Dunbrack against Mary A. Neall and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

W. B. MAXWELL, for appellants.

W. G. WORLEY, for appellee.

McWHORTER, JUDGE:

By deed dated the 28th day of March, 1896, Mary A. Neall and James A. Neall, her husband, of Philadelphia, Pennsylvania, by J. S. Neall, their attorney in fact, conveyed to A. C. Dunbrack certain parcels of land therein described, being in the town of Parsons in Tucker county, in consideration of $2,-500, of which $625 was paid in cash and three notes signed by A. C. Dunbrack bearing even date with the deed for $625, payable respectively on or before the 28th days of March, 1897, 1898, and 1899, and being the deferred installments of purchase money on said property. On the same day said Dunbrack executed a deed of trust to J. S. Neall, trustee, on the same property, to secure the payment of said notes. While the deeds bear date on the 28th day of March, the transaction was not really consummated and the deeds delivered until the 29th day of June, 1896. On the 4th day of June, 1896, before the transaction had been completed in writing, Mary A. Neall insured the building on the property so conveyed in the Scottish Union and National Insurance Company for $2,000.° After the execution of said deed of conveyance and trust deed, on the 27th of July, 1896, she endorsed on said policy an assignment of the same to A. C. Dunbrack subject to the consent of the Insurance Company, and on the 7th of August following the Insurance Company, by its agent, endorsed its consent to said assignment and at the same time entered thereon the further endorsement "This policy is hereby transferred and assigned. to A. C. Dunbrack with loss, if any, payable to J. S. Neall, trustee for Mary A. Neall, as his interest may appear." On the 18th day of May, 1897, the insured building was burned. The trustee, Neall, gave notice to sell the property conveyed by said deed of trust, to be sold on the 18th day of August, 1897. On the 12th day of August, 1897, Dunbrack presented his bill of complaint

against Mary A. Neall, J. S. Neall, trustee, and the Scottish Union and National Insurance Company, to the judge of the circuit court of Tucker county, praying an injunction to restrain the trustee from selling the said property on the 18th of August or any other day until the further order of the court, and that the trustee be required to give bond as required by law, and that he be required to produce said insurance policy with a full statement of all steps taken by him to collect the same, and that said Insurance Company be required, on its part, to answer and set up in said suit why said insurance policy had not been paid by it and any defense, if any it had, against such payment, and that said company be required to pay the face of said policy, $2,000, and interest thereon, into court, to be paid by it to the said Neall direct upon her said trust deed, and that plaintiff after being permitted to retain the cost of the suit might be permitted to pay to said Mary Neall the balance due on said trust deed, if there be any balance, then due, and that she then be required to release said trust deed and relieve the said land from the lien thereon, and for general relief.

Plaintiff in his bill alleges the assignment by Mrs. Neall to plaintiff with the knowledge and assent of said company and his own assignment thereof to trustee Neall as security for said purchase money; that the said policy was delivered by plaintiff to the trustee who was a non-resident of the State of West Virginia and a resident of Colorado, and alleged that said insurance policy was necessarily a primary security for said trust debt, and by every construction of law and equity and the understanding of parties in case of destruction of property by fire the same was to be immediately collected and paid upon said debt and to the relief of the land, and there was no good reason why such collection and application should not be made by the trustee, and that no just defense could be made by the company to making such payment; that by reason of said $2,000 insurance, plaintiff "Was stopped from taking further insurance on said building;" that said trustee, acting through his local attorney, had not collected said policy nor taken any steps to do so, nor produced the policy, nor allowed plaintiff in his behalf to take legal steps for its collection, but on the contrary had advertised said land for sale under said trust deed, and that unless this Court of equity would intervene to prevent, the property would be sold at great loss and detriment to plaintiff;

that plaintiff was advised that under the circumstances a court of equity would intervene and lend its assistance to stop the high-handed outrage, by staying and enjoining the trustee from making sale until he had collected said insurance and applied the proceeds to said debt, or demonstrated by proper legal proceedings that the same was uncollectable; and further, he had submitted himself to the jurisdiction of the court by executing a proper bond so that plaintiff might have some assurance that the trust debt would be properly paid to the beneficiary, and any balance to plaintiff, and the court, having, and taken, jurisdiction for this purpose, should take such jurisdiction for all purposes, and should in this proceeding require said trustee to produce and file his insurance policy and require said insurance company to at once make any and all defense they might have to the payment of its liability thereunder, and if it should appear that no just defense existed require it to pay the amount at once into court to be applied to payment of said trust debt and the plaintiff be permitted to pay the balance to the entire discharge of said debt and relief of said land. The defendants, Mary A. Neall and J. S. Neall, trustee, filed their joint and separate answers showing that the deed of conveyance and trust deed were delivered on the 29th day of June, 1896, the acknowledgment of the trust deed by Dunbrack bearing that date, and the cash payment of $625 being made on that day; that the policy of insurance was taken by Mary A. Neall on the 4th day of June, while she was uncertain as to whether the sale to Dunbrack would be consummated; that she paid the whole of the premium thereon and that when plaintiff complied with the terms of the sale she by her agent offered to assign said insurance policy to plaintiff if he would pay her the premium which she had paid thereon, which plaintiff refused to do; she then set about to get the policy so transferred that in case of loss of the building she would be able to receive some of the benefit from her said insurance, and accordingly by the consent of the company had the endorsement made and endorsed on said policy, in which condition it was at the time of the fire which destroyed the building; that after the destruction of the building respondents made proof of loss and demanded payment of the Insurance Company, but the company refused to pay until the trustee should exhaust his remedy under the trust deed by sale of the land establishing the amount of his loss, if any, as provid-

ed in the endorsement on said policy, save and except, the sum of $1,000, which the said trustee received and accepted in full settlement of his claim against the said Insurance Company. The trustee then advertised the land to be sold on the 18th of August, 1897. Respondents denied that it was ever agreed between them and plaintiff that the policy should be taken and held by them as a primary or any other kind of security; that plaintiff refused to pay the premium and he had no legal or equitable right to have the benefit of the policy or of any part of it, and denied that they had a contract or understanding with the plaintiff that in case of fire they should collect the amount of the policy and apply it on the purchase money or that there was any understanding or agreement to that effect or any other effect which would relieve plaintiff from the payment of the purchase money due him, and that the allegations of plaintiff's bill that such an agreement and understanding was entered into was utterly false and untrue, and denied that their insurance being in force prevented plaintiff from taking insurance in his own name; that no action had been instituted upon said policy, because of the provision of said policy that the same should be paid to respondent Neall, trustee, "as his interest may appear," which condition when met by the demand of said Insurance Company that his interest could only be made to appear after having exhausted the real estate embraced in the deed of trust had presented such a question that respondent had not made that risk by entering suit upon the policy, and denied the right of plaintiff to be entertained in this Court, and denied every allegation in the bill not admitted in the answer, and praying that the injunction be dissolved.

The Scottish Union and National Insurance Company filed its answer admitting that it had issued the policy to Mary A. Neall; that Mary A. Neall offered plaintiff to have said policy assigned to him if he would repay her the premium which she had paid therefor but he flatly and positively refused to do so and she did not assign said policy to him; that she then set about to devise some plan whereby she could derive some benefit and advantage from said policy which by the terms of a condition therein became void when she sold said property, accordingly she, by her agent, informed respondent through its agents that she had sold the property, taking a trust deed to secure the un-

paid purchase money and asked that the policy be so transferred that she could have the benefit of it in case of fire, and it was arranged by proper assignments that the loss, if any, should be payable to Neall, trustee, for Mary A. Neall, as his interest should appear, all of which was done without having or asking the consent of the plaintiff, and averred that plaintiff having utterly and absolutely refused to have anything to do with said policy that the same must now stand on the same footing as a policy of insurance taken by a mortgagee for his own and sole benefit and the plaintiff could have no benefit of said insurance, either against respondent or as a credit upon the purchase money due by him to Mary A. Neall, and that the adjustment and payment of said policy was wholly a matter between the respondent and Neall, and her trustee, and denied that plaintiff had any interest whatever, in said policy of insurance and filed with its answer a copy of agreement of settlement for $1,000 between itself and J. S. Neal, trustee, for Mary A. Neall, as well as a copy of the policy. On the 15th of December, 1897, the cause came on to be heard upon the bill and the said answers and general replications thereto and exhibits filed with the bill and answers and depositions and upon a motion to dissolve the injunction and the court was of opinion that the cause upon the pleadings and proof was for the plaintiff and overruled the motion to dissolve the injunction, and was further of the opinion that plaintiff Dunbrack was entitled to have the full amount of the insurance policy mentioned in the proceedings applied to and set off against the purchase money and to the defendant Mary A. Neall; that the assignment of said policy by said company to Neall, trustee, and the settlement made by the company with said trustee was without the plaintiff's authority and not binding upon him; that by reason of the admission and ratification of such compromise by the defendant, Mary A. Neall, she was bound by such compromise so far as plaintiff was concerned, but that she would be entitled to recover from the plaintiff the balance of said purchase money after deducting the amount of said insurance policy with its proper interest, less any sum paid for such policy by said Mary A. Neall with its proper interest and any proper costs incurred by her in collecting the debt, said costs to include any advertisements of sale under the deed of trust, but no commissions for making sale, no sale having been made and in ac-

count stated the plaintiff would be entitled to the costs of this suit, and that an order of reference should be had in the cause to state an account according to the opinion of the court set forth in the order and referred the cause to one of the commissioners to report accordingly.

The defendants tendered a bill of review on the 28th of November, 1898, which was rejected. The commissioner filed his report dated the 7th day of March, 1898, to which report Mary A. Neall and J. S. Neall, trustee, filed their six several exceptions. First, "Because no report whatever, should be made in this cause;" because the insurance policy became mortgagee's insurance after the sale to Dunbrack and the assignment of the policy and payable to Neall, trustee, as his interest should appear, as was clearly shown by the evidence taken before the commissioner and that Dunbrack was not entitled to have the benefit thereof, but that the insurance company was entitled to be substituted to the lien of Mary A. Neall to the extent of the payment made by it to her on said policy; because by the evidence of Dunbrack himself, he was not entitled to any benefit of said policy because he never paid for the same, never had it in possession and was not entitled to it until he had repaid the premium and not having repaid the premium at the time of the loss was not entitled to have the possession of, or receive any of the benefit thereof; because the proposed assignment of said insurance policy to Dunbrack was entirely conditional and contingent upon his repayment of the premium to Mrs. Neall, which he never did, and because the commissioner allowed no compensation whatever, to the trustee, Neall, for his services.

On the 28th day of November the cause was brought on to be heard upon the papers, orders, decrees and report of the commissioner and the exceptions thereto, the depositions of witnesses and exception of the plaintiff to the reading of the deposition of F. C. Carroll, when all exceptions to the report were overruled and the exception to the reading and excluding of the deposition of F. C. Carroll was sustained and the commissioner's report in all other respects confirmed, and it appearing from the report of the commissioner, Conley, that there was a balance due Mary A. Neall on account of her vendor's lien from the plaintiff Dunbrack, the sum of $31.30 after giving Dunbrack credit as in the report set forth, which report shows that he was credited with

the whole amount of the policy, $2,000, it was adjudged, ordered and decreed that the vendor's lien of said Mary A. Neall against the property was fully satisfied, and perpetuated the injunction; but which decree was without prejudice to the rights of Mary A. Neall or her trustee against the defendant Insurance Company, if any such rights she might have, and the right to proceed against the same by any proper proceedings. From which decree said Mary A. Neall appealed.

Was the decree of December 15, 1897, appealable? This decree failed to adjudicate the principal issue made by the allegations of the bill, viz: the liability of the Insurance Company on the policy for $2,000, the prayer of the bill being that the said company be required to pay the amount of the policy with interest thereon into court, and that the same be paid to the defendant Mary Neall upon her said trust debt. In *Hill* v. *Als*, 27 W. Va. 215, the syllabus is as follows:

"1. The provision of the statute authorizing appeals to this Court in chancery causes, wherein there is a decree 'adjudicating the principles of the cause,' authorizes such appeal, only where the decree appealed from adjudicates all the controversies between the parties raised by the pleadings or otherwise in the cause." "2. Where the record in a cause shows that the pleadings present two or more controversies between the plaintiff and the different defendants, only one of which was passed upon by the circuit court, and the others left undecided, this Court will dismiss the appeal as having been improvidently awarded." The case of *Shirey* v. *Musgrave*, 29 W. Va. 131, is to the same effect. See also *Hinchman* v. *Morris*, 29 W. Va. 273, and in case of *Kanawha Lodge* v. *Swann*, 37 W. Va. 176, syllabus point three, it is held, "Interlocutory decrees cannot be appealed from except in cases provided for in section 1, chapter 135, of the Code, and an order referring the cause to a commissioner in chancery to make an account is, in general not an appealable decree." The decree of December 15, 1897, being an interlocutory decree the rejection of the bill of review tendered by defendant becomes immaterial. The exception taken by plaintiff to the deposition of F. C. Carroll as being irrelevant and improper under section 35, chapter 130, Code, was improperly sustained by the court and should have been overruled and the deposition read. The deposition was taken before the commissioner before the making of

his report and was concerning a matter not adjudicated in said decree of December 15, and did not come within the purview of said section 35.   Plaintiff's own deposition fails to support the allegations of his bill; he states that he thinks it was in July, 1897, he and Mr. Scott were talking over the matter and Scott calculated the interest and principal of the notes due Mrs. Neall to amount to $2,018, and some cents; that he went over and got Mr. Maxwell to count it up and he made it $2,022.80; that he then offered Maxwell the $2,000 policy or what interest witness had in it and counted him out the $22.80, the amount claimed by Mr. Maxwell that was due to Mrs. Neall.   On cross examination he stated that he didn't remember of ever seeing the insurance policy, never had possession of it; that he knew nothing of Mrs. Neall assigning the same to him only what Mr. Maxwell and Mr. Keim (the agent of the company) told him; that Mr. Keim told him that it was made over to him in his favor and witness told Mr. Maxwell what Keim said, and Maxwell said he didn't think it was any use unless witness held the policy and paid for it; that he had not the money then to pay for it and told Maxwell he would try and raise the money and sent for it but failed to do so; he states also that he executed the deed of trust and made the cash payment, he thinks on the same day.   The date of the acknowledgment of the deed of trust is the 29th day of June, 1896.   Witness F. C. Carroll testifies that he was the adjuster of the Scottish Union & National Insurance Company employed to adjust the loss; that Dunbrack told witness that Maxwell had asked him to pay this premium but that he refused to do it as he did not feel able to carry any insurance; that he also said that if he wanted any insurance he would take it out himself, or something to that effect; that Maxwell had told him that unless he paid the premium he was to receive no benefits from the insurance, and that he told witness in the same conversation that he had nothing to do with witness, that his attorney had advised him that he could make Neall put his building back and he should look to Mr. Neall and not the Insurance Company; that he did not intimate to witness during all the conversation that he had any contract with Mrs. Neall or J. S. Neall, trustee, by which he was to have any benefit from the said insurance policy.   Witness states that at two different times, after the loss occurred he was at Parsons and on both occasions visited Mr. Dunbrack and had

quite a long conversation with him and that during the whole
of either conversation he made no claim or intimation that he
had any claim against the Scottish Union & National Insur-
ance Company, on the contrary he admitted that he did not
know that the policy was in force at the time of the fire and
stated to others after the fire that he had no insurance, repeat-
edly saying that he had nothing whatever to do with witness
or the company that he represented.

W. B. Maxwell testified that he acted as agent for Mrs. Neall
in selling the property to Dunbrack; that on or about the 28th
of March, he had a verbal contract with Dunbrack to sell him
the property on the terms set out in the deed, but that he failed
to make the cash payment until about the 29th of June; that
on the 4th of June he secured for Mrs. Neall the insurance
policy in controversy; that some days afterwards by the direc-
tion of either Mr. or Mrs. Neal he offered Dunbrack to have the
said insurance policy assigned to him if he would repay Mrs.
Neall the premium paid by her; he flatly refused to pay this
premium and said the matter did not affect him; that he then
said to him if he did not repay her the premium that he would
have the policy so assigned as to operate for Mrs. Neall's benefit
in case of loss and he would not get any benefit from it and
accordingly at his advice the policy was assigned as he told Dun-
brack it would be; that Dunbrack never at any time offered or
promised to pay the premium, on the contrary he refused to
do so.

Mr. Dunbrack was again put on the stand and contradicted
what Mr. Maxwell said about his refusing to pay for the policy
and says he went to Mr. Keim to have the property insured and
he informed him that Mrs. Neall had the property insured and
wouldn't give two policies on the same property. "When I
came back I told Mr. Maxwell about it and he told me, yes, that
was right, he had, but said if I would raise him the money he
would have it turned over to me. I told him then I hadn't the
money to spare but as soon as I could I would do so. He at this
time promised to have it assigned over to me as soon as I raised
him the money." At the time the insurance policy was taken
out by Mrs. Neall the contract between her and plaintiff had
not been consummated and she took out the insurance purely
on her own account in her own name and after the contract

was completed and the deed of conveyance delivered, and also the deed of trust, and after the refusal of plaintiff to repay to her the premium on the insurance and take an assignment of the policy she took steps to have the same by assignment and by the action of the company to place her in position to receive the benefit of the policy as a mortgagee in case of fire as she had been divested of the legal title to the property and could only hold insurance as a mortgagee.   In section 449, second May on Insurance, it is said : "Where a mortgagee insures his own interest without any agreement between him and the mortgagor, the latter has no claim to have any portion of the loss recovered applied to the discharge of his debt."      Citing *McIntire* v. *Plaisted,* 68 Me. 363.   In last named case, at page 365 in the opinion, it is said : "It is well settled that a mortgagor cannot require a mortgagee to account to him for money received for insurance where there is no contract between them to that effect and the insurance was procured by the mortgagee for his own benefit and the premium, was paid out of his own money." Citing *Cushing* v. *Thomas,* 34 Me. 496 ; *White* v. *Brown,* 2 Cush. 412 ; *King* v. *Insurance Company,* 7 Cush. 1.   Also in *Insurance Company* v. *Woodberry,* 45 Me., it is held : "If a mortgagee in-sures his own interest without any agreement between him and the mortgagor therefor and a loss occurs the mortgagor is not entitled to any part of the sum paid upon such loss to be applied to the discharge or reduction of his mortgage debt." See also *Carpenter* v. *Insurance Company,* 16 Pet. (U. S.) 495. Plaintiff having utterly failed to maintain the allegations of his bill he clearly had no interest in the policy of insurance.

  The decrees of the circuit court must be reversed and this Court proceeding to make such decree as the circuit court should have rendered, will reverse the decree, dissolve the injunction and dismiss the plaintiff's bill.

*Reversed.*