# CHARLESTON

## BAKER *v*. MONUMENTAL SAVINGS & LOAN ASSOCIATION.

Submitted September 9, 1905.    Decided November 28, 1905.

1.    INSURANCE—*Payment to Mortgagee—Subrogation.*
    Where a *cestui que trust* purchases insurance on the trust property for the security of his debt, secured by the deed of trust, and a loss from fire occurs and the insurance company pays the whole debt secured, it is entitled to take an assignment from the trust creditor of the debt so secured and paid, and to recover the same in the same manner as its assignor could do.    (p. 413).

2.  INSURANCE—*Payment to Mortgagee—Subrogation.*
      Where the owner of real estate, which is subject to a deed of
   trust executed thereon to secure a debt by his vendor, sells and con-
   veys the same reserving his vendor's lien thereon for the purchase
   money, such conveyance being subject to such deed of trust, and
   the trust creditor purchases insurance in said owner's name without
   notice or knowledge that he has conveyed his title thereto, and a
   fire occurs and the insurance company in settlement of the loss
   pays the whole trust debt, it is entitled to an assignment thereof
   and to be subrogated to the rights of the trust creditor.   (p. 412.)

3.  INSURANCE—*Payment to Mortgagee—Subrogation—Insurable Interest.*
      In such case, after such conveyance, such grantor has no interest
   in such real estate except as to his vendor's lien, and he has no
   other insurable interest therein.   (p. 413.)

Appeal from Circuit Court, Tucker County.

Bill by B. Baker against the Monumental Savings & Loan
Association and others.   Decree for plaintiff, and defendant
Scottish Union & National Insurance Company appeals

*Reversed.*

CUNNINGHAM & STALLINGS, for appellant.

R. H. ALLEN, for appellee.

McWHORTER, JUDGE:

The Vincents owned Lot No. 37 (sometimes in the record
designated No. 27) in the Town of Thomas, Tucker county, and
borrowed from the Monumental Savings and Loan Associa-
tion $600 in two sums, $300 the 25th of August, 1896, and
$300 the 20th of January, 1897; and executed two deeds of
trust at the dates mentioned upon the said lot and premises to
secure the same.   In 1897 Joseph Vincent, one of the parties,
became the sole owner of the said lot and conveyed the same to
B. Baker, the said Baker assuming the debts aforesaid.   In 1898,
Baker conveyed the same to Chester Brumbaugh for $1,170,
taking a check as the cash payment of $390 from said Brum-
baugh and his two notes at six and twelve months for $390
each, reserving a vendor's lien to secure the purchase money.
The check was not paid.

At April Rules, 1901, Baker brought his suit in the circuit
court of Tucker county against Clayton Brumbaugh, admin-
istrator of Chester Brumbaugh who had died, —— Brum-
baugh, father and heir at law of Chester Brumbaugh, and the
Monumental Savings and Loan Association, defendants, for

the purpose of enforcing his vendor's lien. And at the October Rules, 1901, said Baker filed an amended bill alleging that the payments made by the Vincents and by himself upon the association's debt had entirely paid up the said debt, and making J. R. Collett, who had filed a mechanic's lien against Baker, a party to his suit, and also making H. J. Wagoner and E. J. Bond, trustees in the said deeds of trust, parties to the suit. The cause was referred to a commissioner to state an account ascertaining the lands owned by Chester Brumbaugh, deceased, the nature and condition of the title thereto, the liens thereon, their amounts and priorities and to whom owing. The commissioner reported that the said Brumbaugh had died siezed of Lot No. 37 in the Town of Thomas, that the debt due the Monumental Savings and Loan Association amounting to $366.50 with interest from March 5, 1902, was the first lien on said lot, and the debt due B. Baker, $1,371.44 with interest from said 5th day of March, 1902, was the second lien on said property; that the amount due John R. Collett was $75.57, to be paid out of the lien of Baker when collected. This report not being excepted to was confirmed on the 7th day of March, 1902, and a decree then entered to sell the said property to pay the said liens. The property was sold on the 5th day of March, 1903, by the commissioner appointed therefor and purchased by the plaintiff, B. Baker, for $501, of which one-third $167 was paid by him in cash, and he executed to the commissioner his two notes of like sums of $156 each payable in three and six months according to the terms of the decree. The sale was confirmed without exception to said report, by decree entered March 10, 1903, and the commissioner ordered to pay out of the cash payment the costs of the suit and sale, and the remainder to be applied by him to the payment of the debts as ascertained and decreed, and that he withdraw the notes and collect the deferred payments and "when collected to pay the same on the debts remaining unpaid in the priority as specified in the decree of sale entered in this cause on the 7th day of March, 1902." On the 26th day of June, 1902, the Monumental Savings and Loan Association, in writing by two assignments of $183.25 each, making together $366.50 the amount of the lien of the said Loan Association, assigned all its right, title and interest in and to the two deeds of trust securing the said loans

of $300 each, to the Scottish Union and National Insurance Company in satisfaction and settlement of the loss sustained by the Monumental Savings and Loan Association under insurance policies numbered respectively 2,455,593 and 2,652,177 issued by said insurance company in the name of B. Baker of Parsons, West Virginia, containing the usual mortgage clause in favor of said association, the building on said lot No. 37, having been destroyed by fire on the 12th day of November, 1901.

At the May Rules, 1903, Baker filed his bill in the circuit court of Tucker county against Clayton Brumbaugh, administrator of Chester Brumbaugh, the Monumental Savings and Loan Association, the Scottish Union & National Insurance Co., and J. P. Scott, special commissioner, enjoining and restraining them from collecting the two notes of $167 each; and that the commissioner be required to retain all of said money, then in his hands or to come into his hands from said notes, and that he be in the end directed to pay such cash then in his hands and the notes to be collected to the plaintiff; and that any further claim of the Monumental Savings and Loan Association or the Scottish Union and National Insurance Company be held to be void as against said special commissioner, and for general relief. The injunction was granted as prayed for. The Scottish Union and National Insurance Company filed its demurrer and answer, which demurrer was overruled by the court. Depositions were taken and the cause came on to be heard on the 25th day of March, 1905, upon the bill and answer of the Scottish Union and National Insurance Company and exhibits filed therewith, and the general replication thereto, former orders and decrees, upon the depositions duly taken and filed on behalf of the plaintiff, when the court held that the lien of the Monumental Savings and Loan Association on Lot No. 37 was discharged by the payment to said association of the amount due it by the Scottish Union and National Insurance Company under the said policies of insurance; and the said defendant Scott, special commissioner, was restrained and enjoined from paying to the Scottish Union and National Insurance Company or the Monumental Savings and Loan Association, their agents or assigns, the money arising from the sale of the real estate in this cause; and it was decreed that said commissioner pay the

money, in his hands or to come into his hands by virtue of the notes executed for the deferred payment of the purchase money as mentioned in the bill, to plaintiff Baker, except that he pay to John R. Collett the sum of $75.57 by virtue of his mechanic's lien; and decreed plaintiff costs in this suit against the Scottish Union and National Insurance Company, from which decree the Scottish Union and National Insurance Company appealed and assigned many grounds of error.

The only question really involved in the cause is, whether the appellant insurance company had a right to purchase from the Monumental Savings and Loan Association its lien for $366.50 which had been reported by the commissioner as the first lien upon the lot No. 37, and so decreed to said association, and to be. subrogated to the rights of said association under said decree or whether the payment of said sum to the association was a discharge of the lien. It is contended by counsel for appellant that the decree of March 7, 1902, fixing the priorities of the liens and making the amount in question the first lien and directing its payment in that order was *res adjudicata* and it was too late to change the priorities and to disturb its relation. It is not a question of *res adjudicata*, as it would be if the purpose was to change its relation as a lien, but a question of the subsequent payment of the decree by the appellant company.

Plaintiff Baker conveyed the lot No. 37 to Chester Brumbaugh by deed dated December 10, 1898, reserving his vendor's lien for the purchase money, from which time he ceased to own the lot or have any other or further interest in it than his vendor's lien upon it. It is true he had an insurable interest in the property for the further security of his lien, but he took out no insurance upon it. After the policies first taken out by the Vincents expired, on the 27th day of January, 1900, and the 4th day of September, 1900, the Monumental Association, without the knowledge that Baker had conveyed the property more than a year prior thereto to Chester Brumbaugh, took out two policies of insurance of $300 each in the name of B. Baker in the appellant company, loss, if any, payable to the said Monumental Association, as a further security for their said two loans. This the Association had an unquestioned right to do for its own benefit. The fire which destroyed the property insured occurred November 12, 1901,

and although the policies provided that if fire occur the insured should give immediate notice of any loss thereby in writing to the insurance company and make full proofs of loss within sixty days after the fire.  Plaintiff Baker complied with none of the requirements of said policies, never pretended to make any claim on account of said policies until after he had purchased the lot at judicial sale in March, 1903, nor until he filed his bill of injunction at May Rules, 1903, eighteen months after the fire occurred.  Indeed, it very clearly appears from the testimony of Baker that he knew nothing about the existence of the insurance policies upon which the money was paid by the appellant company for the decree assigned to it by the Monumental Savings and Loan Association.  While he says in his examination in chief that he paid insurance premiums, on his cross-examination it is made to appear that what he paid on account of insurance premiums was on the insurance taken by Vincent, during which time the first fire occurred and he got $200 out of it, and he knew nothing of any insurance afterwards.  He says he does not know that it was afterwards insured, if it was, it was by his attorney.  It is very certain that his attorney did not take out the insurance in question in the appellant company.  The debt of the Monumental Association was paid in full, or rather the appellant company paid for it the full amount of the debt.  In *Carpenter v. Insurance Co.*, 16 Pet. (U. S.) 495, it is held :  "By the Court: No doubt can exist that the mortgagor and the mortgagee may each separately insure his own distinct interest in property against loss by fire.  But there is this important distinction between the cases; that where the mortgagee insures solely on his own account, it is but an insurance of his debt; and if his debt is afterwards paid or extinguished, the policy ceases from that time to have any operation; and even if the premises insured are subsequently destroyed by fire, he has no right to recover for the loss, for he sustains no damage thereby; neither can the mortgagor take advantage of the policy, for he has no interest whatsoever therein: on the other hand, if the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortagee, if it does not exceed the insurance.  Upon such payment, the underwriters are entitled

to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of the insurance is not a discharge of the debt, but only changes the creditor." See 27 A. & E. E. L. 263, and cases cited; *Dunbrack* v. *Neal*, 55 W. Va. 565; *Insurance Co.* v. *Bank*, 85 Va. 765; Hogg's Eq. Prin., section 415.

For the reasons herein given, the decree of the circuit court of Tucker county is reversed and set aside, the injunction dissolved, and the plaintiff's bill dismissed.

*Reversed.*