## FRANK B. HALL & CO., Inc., v. JEFFERSON INS. CO., et al.

(District Court, S. D. New York. November 26, 1921.)

1. **Insurance ⨝138(1)—Provision dispensing with proof of interest legal; "P. P. I."**

A marine insurance policy, providing that, in the event of loss, the policy is to be deemed sufficient proof of interest—policy proof of interest ("P. P. I.")—is legal, and amounts to an agreement that insured shall be recognized, without further proof, to have had the interest named in the policy.

2. **Insurance ⨝665(2)—Provision dispensing with proof of interest applies to interest at time of loss.**

A marine insurance policy, providing that the policy shall be deemed sufficient proof of interest, covers insured's interest at the time of loss, in the absence of any showing that it is a wagering contract.

3. **Insurance ⨝475—Marine policy admitting full interest enforced for full vaue.**

A marine insurance policy, covering vessel against which insured had a maritime lien for supplies, and which provided that the policy should be sufficient proof of interest, and that full interest was admitted, must be enforced for the full value of the insurance, though the actual value of the supplies furnished was less.

4. **Insurance ⨝665(4)—Proof of loss held to make prima facie case.**

Under a marine insurance policy, issued to one having a maritime lien, and providing that the policy should be deemed sufficient proof of interest, and that full interest was admitted, insured makes out a prima facie case on proof of total loss of the vessel.

5. **Insurance ⨝606(3)—Marine insurer held subrogated to insured's rights under maritime lien.**

A marine insurance policy, issued to one having a maritime lien for supplies, and providing that the policy was to be deemed sufficient proof of interest, and that full interest was admitted, is a contract of indemnity against loss, and the insurer, on paying the loss, is subrogated to insured's rights against the owner of the vessel.

6. **Insurance ⨝480—Recovery defeated to extent insured paid by vessel owner.**

As one insuring the holder of a maritime lien for supplies, by a policy declaring that it should be sufficient proof of interest, and that full interest was admitted, has a right of subrogation, the vessel owner's payment for the supplies is a defense to the extent of such payment, in a suit in admiralty on the policy.

In Admiralty. Libel by Frank B. Hall & Co., Inc., against the Jefferson Insurance Company and others. Decree for libelant.

Libel in personam on an insurance policy. The libelants having furnished certain supplies to the schooner J. E. Dubignon, for which they had a maritime lien in whole or in part, applied to the respondent, among others, for a policy of insurance. This was given in the following words: "Baker, Carver & Morrell, and/or as agents, on account of whom it may concern, in case of loss to be paid to them or order, do make insurance and cause to be insured, lost or not lost, on advances, as per form attached, at and from New York to Buenos Aires, direct or otherwise, and for fifteen days in port after arrival." There were two "riders" on the policy. The first read: "Upon advances per the vessel called the schooner J. E. Dubignon. * * * This insurance is against the risk of total and/or constructive total loss of vessel." The second rider, and this is the important one, read: "In the event of loss this policy is to be deemed sufficient proof of interest. Full interest admitted." The last three words were typed; the earlier words in the second rider printed. In the margin of the policy, below the printed words "Amount Insured," were typed the figures "$6,000." In other respects the

insurance was what is known as the "Boston schooner policy," and need not be set forth.

The actual value of the supplies furnished by the libelants was not $6,000, but about $4,800, all of which were unpaid when she sailed. She was never reported at any port or on the seas, and it is conceded that she is lost. Meanwhile the owner, who was personally indebted for the supplies, has paid the libelants in full, though it is necessarily impossible to know whether or not at that time the schooner had been lost.

John A. McManus, of New York City, for libelants.
William Harison, of New York City, for respondent.

LEARNED HAND, District Judge (after stating the facts as above). Two questions arise: First. What should be the recovery of the libelants, if the owners had not paid them? Second. Does the fact of payment affect their rights? While the policy reads as an insurance of "advances," it is clear that it was not meant to guarantee the owner's payment, but the libelants' interest in the schooner, which was a maritime lien.

[1, 2] The form of the policy, policy proof of interest (P. P. I.), is familiar, and in this country legal. It amounts to an agreement that "in the event of loss" the insured shall be recognized without further proof to have had the interest named in the policy in the subject-matter insured. To this the insurers here answer that, while this may be true as of the time when the policy was written, it does not apply when the loss occurs. Under the proof it is impossible to say whether the loss occurred before or after the owner paid his debt and extinguished the lien. Hence they argue the libelants fail to show that there has been any loss, and must fail.

This follows if the P. P. I. clause only covers the insured's interest at the time when the risk attached. I think that it must be held to go further. The clause reads, "In the event of loss this policy is to be deemed sufficient proof of interest." Interest at what time? Certainly "in the event of loss," which is the only relevant time. The clause is meant to relieve the insured from showing that at that time he had an insurable interest. This, indeed, may result in a wagering contract, and so far the clause might be thought void; but, as that is not even argued, the clause must be enforced as it reads.

[3] Again, I think that it must be enforced for the full value of the insurance. Is it a "valued" policy? If so, it is such by virtue of the typed words, "Full interest admitted." These are redundant, if they refer to the libelants' interest as lienor; they have a meaning, if they refer to the amount of the lien. It was unnecessary to show that no one else was interested in the "advances." The policy with the P. P. I. clause effected that as it stood. Some meaning must be given them, and it seems to me that they must mean that the "advances" must be taken at their "full interest," as stated in the policy. There was reason for this; the proof of the value of the supplies might be difficult and doubtful. An agreed valuation was a reasonable provision.

[4, 5] Therefore it appears to me that, on proof of total loss of the schooner, the libelants make out a prima facie case. Such alone

must have been the purpose of the parties; that purpose was legal. However, the contract was one of insurance, and insurance is indemnity for loss. If, therefore, the owner had not paid the bill for supplies, the insurer, upon paying the loss, would have been subrogated to the insured's rights. The reason for this is clear; otherwise, the insured could collect twice, once from the insurer, and again, in part, at least, from the owner. This would ignore the fundamental postulate of all insurance, that it must not be a mere bet upon a future event.

The principle of subrogation in such cases is well recognized. For example, the rule is settled that the insurer has the right of subrogation against a carrier, who may be responsible for the loss of the goods. Garrison v. Memphis Ins. Co., 19 How. 312, 15 L. Ed. 656; Clark v. Wilson, 103 Mass. 219, 4 Am. Rep. 532. This is because in this way alone can the insured be prevented from two recoveries, turning his policy into a wager. The case at bar is not that, but it is governed by the same principle; it is the case of a lienor taking out insurance for himself on his lien, quite the same case as a fire policy taken out by a mortgagee.

Carpenter v. Providence, etc., Co., 16 Pet. 495, 10 L. Ed. 1044, controls, I think. It is said that the remarks of Mr. Justice Story in that case are obiter. True the case could have been decided without them, because it was only necessary to decide that insurance taken out by the mortgagor and assigned to the mortgagee was still mortgagor's insurance. Still they have the authority of the deliberate judgment of the great judge who uttered them. His decision in Hancox v. Fishing Ins. Co., 3 Sumn. 132, Fed. Cas. No. 6013 is consistent only with the same doctrine. There, in a case similar to that at bar, he allowed recovery upon the theory that the insurers, after payment, should be subrogated.

I agree that the insured is not compelled to exhaust his other remedies first. Excelsior Fire Ins. Co. v. Royal Ins. Co., 55 N. Y. 343, 14 Am. Rep. 271. But that does not touch his right of subrogation. No other creditor with two claims is so obliged. Ulster Co. Savings Inst. v. Leake, 73 N. Y. 161, 164, 29 Am. Rep. 115, treats as law the dictum in Excelsior, etc., Co. v. Royal, etc., Co., supra, 55 N. Y. 359, 14 Am. Rep. 271, that the insurer is entitled to be subrogated. Subrogation was allowed in Baker v. Monumental, etc., Ass'n, 58 W. Va. 408, 52 S. E. 403, 3 L. R. A. (N. S.) 79, 112 Am. St. Rep. 996, Gillaspie v. Scottish, etc., Co., 61 W. Va. 169, 56 S. E. 213, 11 L. R. A. (N. S.) 143, Norwich Fire Ins. Co. v. Boomer, 52 Ill. 442, 4 Am. Rep. 618, and Leydon v. Lawrence, 79 N. J. Eq. 113, 81 Atl. 121; Id. 80 N. J. Eq. 550, 85 Atl. 1134.

I cannot think that the contrary opinion could have ever gained acceptance, but for the great name of Shaw, which gave it currency after King v. State, etc., Co., 7 Cush. (Mass.) 1, 54 Am. Dec. 683. That case is indeed squarely to the contrary, and without the support of other decisions I should scarcely wish to differ from it. However, it stands alone, I think, and has been now overruled by statute. Canton Co. Op. Bank v. American, etc., Co., 219 Mass. 132, 106 N. E. 635. With deference it seems to me clearly to ignore the character of the insurance

contract, and the control which equity will exert to effectuate the only lawful purpose which the parties might entertain.

[6] If the respondent had the right of subrogation, then it would, of course, be entitled to treat as a defense the owner's payment of the debt, by which the debt was discharged. It may be argued that this result is the same as though the P. P. I. clause were ignored; but that is not true. If the clause were ignored, there could be no recovery at all, since it would be impossible to show that the lien was in existence when the schooner sank. The combination of that clause and the "valued insurance" clause together assure the lienor of a total recovery of $6,000 from one source or another, which is what the parties bargained for. Those provisions in the agreement must be enforced in some fashion, but they cannot disguise the general character of the transaction. Formally, the proper way to regard the case is to treat the policy as indisputable, and to permit a decree for the full amount, but in equity to enjoin its collection to the extent that the insured has profited by the discharge of those rights to which the insurer would have been entitled. In the admiralty, all this may all be done in one decree.

Decree accordingly; no costs.