FOUNTAIN, Respondent, vs. IMPORTERS AND EXPORTERS INSURANCE COMPANY OF NEW YORK, Appellant.

*January 12—April 3, 1934.*

For the appellant there was a brief by *Rouiller & Dougherty*, attorneys, and *Robert E. Tehan* of counsel, all of Milwaukee, and oral argument by *Mr. Tehan*.

For the respondent the cause was submitted on the brief of *Herman Leicht*, attorney, and *E. J. Neuenschwander* of counsel, both of Medford.

The following opinon was filed February 6, 1934:

FOWLER, J. The plaintiff, Adrian Fountain, was named as the assured in a fire insurance policy issued by the defendant covering twelve automobiles specifically described. Seven of these cars were totally destroyed by fire. Fountain was a dealer in second-hand cars at Prentice. His purchases were financed by Charles Fleming, who conducted an automobile and garage business at Medford. Whenever Fountain bought a car he drew his own check for the purchase

price on a bank with which Fleming was connected but in which Fountain kept no funds. Fountain would send the certificate of title to Fleming, who on its receipt would direct the bank to honor the check. Fleming would then charge Fountain with the amount of the check plus ten per cent. for financing and hold the certificate of title until Fountain sold the car, when Fountain, if the car was sold for cash, would pay him the amount of his charge and deliver the certificate of title. What was done if a car was sold without payment in cash is hereinafter stated. Fountain would recondition the cars after purchasing them and the cars were kept in his possession until sold. The space for insertion of the name of the assignee in the assignment of the certificate of title was left blank when Fountain purchased and remained blank until after the car was sold. The trial court held that Fountain had an insurable interest in all of the cars, and that Fleming's interest in the cars was that of a lien to secure his advance of the purchase price and his charge for financing. The value of the cars destroyed was fixed by the jury at less than the amount of Fleming's liens. The court concluded that Fountain was entitled to recover the value of the cars as found by the jury.

It appears that Fountain and Fleming did not understand or agree upon the effect of their transactions, although they agree as to the facts which control the effect. Nothing was said between them as to the effect of any individual transaction or that Fleming had or was to hold the certificate of title as security. Nor was anything said between them as to ownership of the cars. Fleming testified that he did not have any security on the cars. Fountain testified that there were no incumbrances on the cars, because they were all Fleming's cars; that Fleming had title; that Fleming had nothing against him to get his money out; that he took out the policy to protect himself if something turned up in the future so that Fleming could not get something

out of him; that he would say he probably did not have any interest in the cars until he sold them, but that he figured he would be held liable for the cars.

What the parties conceived the legal effect of their transactions to be is immaterial. Fountain became the owner of the cars when he purchased them, and remained so until he sold them; he owed Fleming the amount of his advance and finance charge upon each car; and Fleming had an equitable mortgage on each car to secure that amount.

The appellant contends that it is not liable on the grounds that (1) the policy did not cover the cars destroyed because Fleming had a lien on the cars, and that (2) Fountain sustained no loss because the amount of Fleming's liens exceeded the value of the cars as found by the jury.

(1) In the case of *Moe v. Allemannia Fire Ins. Co.* 209 Wis. 526, 244 N. W. 593, a fire insurance policy contained a clause as follows:

*"Chattel mortgage.* Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage to any property insured hereunder *while incumbered* by a chattel mortgage, and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder."

It was held that the company was not liable for destruction of property by fire on which a mortgage existed at the time of the fire.

The policy in suit contains a clause as follows:

"Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage or other incumbrance specifically set forth and described in paragraph D of this policy, this company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage or other incumbrance."

There is no material difference between the two clauses quoted.

It is contended that the facts as to the transactions between Fountain and Fleming were fully stated to the agent of the defendant who issued the policy at the time Fountain applied for the policy, and that as sec. 209.08, Stats., provides that knowledge by an agent at the time of an application for a policy shall be knowledge of the company, and any fact *which breaches a condition* of the policy and is known to the agent shall not void the policy or defeat recovery, the existence of Fleming's lien does not void the policy and does not defeat recovery. But the mortgages on the property named in the policy in suit did not breach any condition of the policy. The clause does not say that in case there be a lien on the property the policy shall be void. The policy did not by its terms cover the destroyed property. As in the case above cited, the clause invoked by the appellant is a coverage clause. The insured agreed that mortgaged property was not covered by the policy. "This clause clearly relates to the extent of the coverage," as stated in the *Allemannia Fire Ins. Co. Case, supra,* and under the terms of the policy as written the plaintiff cannot recover.

It quite clearly appears, however, that the intention in the instant case was to cover the specific cars described in the policy. The court expressly found that the agent of the defendant had knowledge that "Fleming financed the purchase and handling of the cars and held the title papers." This was equivalent to finding that the agent had knowledge that the cars were in fact mortgaged. To permit the defendant to avoid liability under such circumstances would permit it to perpetrate a constructive fraud. The plaintiff intended to procure insurance. The agent intended to issue insurance. Both understood insurance was effected. There was a mutual mistake of the parties as to the effect of the policy. The policy is clearly subject to reformation for mutual mistake. The mistake is one of law as to the effect of the policy, but such mistakes authorize reformation of the

contract to make it express the intention of the parties. *Shearer v. Pringle,* 203 Wis. 164, 233 N. W. 623, 71 A. L. R. 1302.

Sec. 6 of paragraph D of the policy, the paragraph referred to in the coverage clause above quoted, recites "that there is no lien, mortgage or other incumbrance thereon (on the property covered) except as follows: no exceptions." Had the existence of Fleming's liens been alleged in the complaint and the complaint had prayed for reformation of the policy by inserting in the above clause "except a lien of Charles Fleming for a loan to finance the purchase thereof," under the undisputed evidence that it was the intention of the parties that the cars described be insured and the finding of the court respecting the agent's knowledge of the liens, reformation and recovery would have been adjudged if Fountain sustained any loss by the burning of the property. *Journal Co. v. General Acc., F. & L. Assur. Corp.* 188 Wis. 140, 205 N. W. 800; *McKinnon v. Massachusetts Bonding & Ins. Co.* 213 Wis. 145, 250 N. W. 503. The issue of reformation was not raised by the pleadings and there was no trial of that issue, but the court having found the fact that with the undisputed evidence as to intent of the parties warrants reformation, no need appears to remand the case with instructions to permit amendment of the complaint to raise the issue of reformation and for trial of that issue, as would manifestly be required in the interest of justice but for the finding and undisputed evidence referred to.

(2) The trial court found that Fountain had an insurable interest in the destroyed cars. Of the seven destroyed cars, two had not been sold by Fountain. Five of them were cars that had been sold, and "repossessed" for breach by the buyer of the conditions of their sale. We will consider the two classes of cars separately:

(a) As to the two cars remaining unsold, as stated above, Fountain was the owner of them, and Fleming was an equi-

table mortgagee for the amount of his charge for financing the purchase. The owner of property may insure it for its full value although his interest therein is only an equity. The measure of recovery is the full value of the property within the limits of the policy. 68 A. L. R. 1349 and cases cited. *Kludt v. German Mut. Fire Ins. Co.* 152 Wis. 637, 140 N. W. 321, is to the same effect. It is there held (p. 646) that where the assured has an insurable interest the whole amount of the loss, not exceeding the amount stipulated, may be recovered. We are not unmindful of the following provision of the policy: "subject to all the provisions, exclusions, conditions and warranties contained in this policy, loss, if any, payable, as interest may appear, to the assured and nil." This provision is manifestly inserted to cover the situation where the interests of two or more persons are expressly insured, as in case of owner and mortgagee or the like, in which case the name of the other insured is inserted in the blank space. The clause as written merely indicates that only the "assured" is insured by the policy, and was not intended to and does not limit his recovery to the value of his interest in the property. As to these two cars we are of opinion that the plaintiff is entitled to recover their value at the time of the loss, with interest.

(b) As to four of the repossessed cars we are of opinion that under the evidence as it stands it does not appear that Fountain had an insurable interest therein. Fleming testified that when a car was sold by Fountain, if the car was sold for cash, Fountain paid him cash to the amount of his financing charge, and that if it was sold "on time or part payment plan we (Fleming) took the paper of the party to whom the car was sold and gave him (Fountain) credit for it." Sheets in evidence whereon Fleming kept an account respecting each of the cars, show that four of the repossessed cars were settled for and paid for by Fountain when they were sold. From this alone the inference would be that Fountain had

no further interest in a car after it was sold and Fleming's charge against him therefor was fully paid. The ownership in a car after it was sold was no longer in Fountain, but in the purchaser. Fleming's lien thereon remained, for he held the sale papers and kept the certificate of title in his possession after having the sale recorded in the secretary of state's office, and the right to repossess it for breach of conditions of sale was in Fleming, not Fountain. Therefore, unless in fact by some arrangement between Fleming and Fountain not shown in the evidence the ownership was in Fountain after repossession, Fountain's act of repossession was as agent of Fleming. If Fleming still held Fountain liable on the paper turned over in settlement of charges against a car,—that is if the credit given was subject to the paper being paid and not absolute, and Fleming reassigned to Fountain on breach of condition,—the situation would doubtless be otherwise.

As to one of the "repossessed" cars, a Chevrolet coach obtained in 1928, which was procured by Fountain in a trade, we are unable to draw any inference from the record whether Fountain ever procured a lien upon it.

From the above it follows that Fountain is entitled to recover the value of the two cars not repossessed. The verdict does not assess the value of the individual cars, but assessed their aggregate value. There must be a new trial to determine the amount of the recovery for the destruction of these cars, and to determine whether Fountain had an insurable interest in the repossessed cars.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on April 3, 1934.