No. 37,492

Ralf Hockens, *Appellee*, v. The Republic Mutual Fire Insurance Company of Belleville, *Appellant*.

(204 P. 2d 773)

Opinion filed
April 9, 1949.

*Robert L. Webb,* of Topeka, argued the cause, and *Robert Stone, James A. McClure,* and *Ralph W. Oman,* all of Topeka, were with him on the briefs for the appellant.

*George M. Brewster,* of Topeka, argued the cause, and *Lester M. Goodell* and *Margaret McGurnaghan,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.:   This is an action on a fire insurance policy issued by a mutual fire insurance company covering loss of seed corn. The company denied liability, suit was filed and following a trial by the court in which a jury was waived judgment was rendered for the insured in the amount of $2,725 together with $350 as attorney fees. Defendant company's motion for a new trial was overruled and it appeals. At the outset it should be stated that the correctness of the amount allowed for the loss of the seed corn is not in question—it having been stipulated at the commencement of the trial.

The facts of the case as disclosed by the pleadings and the evidence are as follows:

Plaintiff owned and lived on his farm in Jefferson county and for a number of years had specialized in the production and sale of hybrid seed corn. The buildings on the farm consisted of a nine-room house in which plaintiff and his wife lived, two large barns, stock sheds, two machine sheds, a government bin of 500-bushel capacity, and other buildings, one of which was referred to as a seed house and used for sorting seed corn. This latter building was about 11 feet wide and 80 feet long, contained seed corn graders and a number of corn bins which would hold about 750 bushels. It appears that the work of shelling and grading was done here after which the graded corn would be sacked and stored in a room of plaintiff's house.

The facts concerning the description and use of this room of plaintiff's house for the storage of grain (and which really brought about this lawsuit) are as follows:

Formerly when plaintiff's family was larger this room had been used as a parlor but in the spring of 1941 the furnishings were removed and since then had been used for the storage of sacked seed corn. It was an integral part of the house, had two or possibly three outside exposures, was about 18 feet square, had two windows, and

three doors one of which lead into the dining room. In the spring of 1942 plaintiff put a heavy beam under the floor of this room so that it would support a heavier load. Since 1941 the room had been used exclusively for the storage of seed corn.

Plaintiff's house, of which the room in question was a part, was heated by a furnace and was lighted by an electric plant located in the basement. The kitchen had a coal-burning cookstove which was used the year around.

Plaintiff did his banking business in Valley Falls. Mr. Doyle, cashier of the bank, also sold insurance. In the fall of 1945 plaintiff applied for fire insurance in the amount of $7,500 covering seed corn. Mr. Doyle died prior to the trial of this lawsuit but plaintiff's testimony was to the effect that when Doyle asked him where the seed corn would be located he gave him the legal description of his quarter-section farm and that nothing was said by either party as to the buildings in which it would be stored. A few days later Doyle called plaintiff on the telephone and told him he was unable to get the insurance with the company that had carried it the year before as it did not have the insurance on the buildings but that he had another company that would write it and plaintiff in effect told him to go ahead. Plaintiff later knew that the insurance had been written because included with his next month's canceled checks received from the bank was a debit slip covering the premium. He further testified that Doyle never asked him to sign an application for the insurance; that he had not signed an application blank; that no inspection was ever made by Doyle or by any other company representative; that the policy had been kept by Doyle in the bank as had been the custom between the parties with reference to other insurance policies in the past and that he did not see the policy until after the fire which occurred on April 3, 1946. The fire destroyed the dwelling house and another small building. At the time of the fire there were 360 bushels of seed corn stored in the room in question and other seed corn in another building which was not destroyed. Plaintiff did not have any other insurance on the seed corn but did have insurance on his house and household goods in another company not represented by Mr. Doyle. After the fire he went to the bank to examine his policy. His claim for loss was denied by defendant company on the ground that it was not covered under the policy. Shortly thereafter this lawsuit was filed.

The application for the policy contained the following:

"Application of ........Ralf Hockens ........P. O. Address ........Arrington, Kansas ........To THE REPUBLIC MUTUAL FIRE INSURANCE COMPANY OF BELLEVILLE, KANSAS. For indemnity against loss or damage by Fire and Lighting to the amount of—$7,500.00—

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"26. On—seed corn in barn and granary—    $7,500

"Said property being owned by me, and (except as herein otherwise provided) situated on and confined to ........160........ acres in the ........NE ¼........ Section ........29........ Twp. ........7........ Range ........17........ County of ........Jefferson ........, State of Kansas.

.    .    .    . .    .    .    .    .    .    .    .    .    .

"Dated at ........Valley Falls........, State of Kansas, this ........30th day of ........ October ........, 1945........    ·

"Witness ........M. J. Doyle........ Applicant ........Ralf Hockens........"

As heretofore stated the plaintiff denies ever signing the application, and on the trial the matter was not pursued. Mr. Doyle died in June, 1947, and the trial was had the following November.

The policy provided that defendant company—

". . . DOES INSURE ........RALF HOCKENS........ Against Direct Loss or Damage by FIRE and LIGHTNING, except as hereinafter provided, to an amount not exceeding .....Seven-Thousand-Five-Hundred and No/100 ........:.DOLLARS, . . . to the following described property while located and contained as described herein, and not elsewhere, to-wit: . . .     ·

"26. On *seed corn in barn and granary* $........7,500........

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Said property being owned by the insured, and (except as herein otherwise provided) situated on and confined to ........160........ acres in the ........NE ¼ ........ of Section ........29........, Township ........7........ Range ........17........, County of ........Jefferson........, State of Kansas."

The company defended on the theory that the terms of the policy were plain, fair and unambiguous; that the seed corn was to be stored "in barn and granary" as the terms are generally and commonly understood; that the dwelling house did not constitute a "barn" or "granary" and that storage of seed corn therein constituted a greater risk and hazard within any reasonable or proper interpretation of the policy. At the trial the secretary of the company testified to the receipt and approval of the application and the issuance of the policy, as to agent Doyle's contract with the company and that while the company did not have any bylaws which prohibited the insurance of grain stored in a dwelling, yet for years it had been an established rule and policy not to insure grain so stored and that the company would have declined such a risk had it known where the grain was to be stored.

After hearing all the evidence the court rendered judgment in favor of the plaintiff for the full amount of the loss together with attorney fees.

On appeal appellant company argues that—(1) a fair and unambiguous contract is not subject to change by the courts but is to be enforced according to its terms; (2) the pleadings do not seek a reformation of this policy and that in any event reformation would not lie for the reason the two grounds for reformation, namely, mutual mistake or mistake on the part of the plaintiff and fraud on the part of defendant, are not present; (3) the room of this dwelling house did not constitute a granary; and (4) the policy should be construed strictly against the insured because of the fact that the company is a mutual fire insurance company.

Appellee's argument on behalf of the trial court's finding and ruling is based upon three propositions: First, that the policy in question was intended to cover the seed corn so long as it was situated upon and confined to the land described in the policy and the court has a right to consider the policy as reformed to express the real intention and understanding; secondly, that regardless of the question of reformation the place where the seed corn was stored at the time of the fire was a granary within the common meaning and understanding of that word and within the meaning of the policy; and thirdly, that since defendant company had no bylaws pertaining to insurance on grain stored in a dwelling, which under the provisions of G. S. 1935, 40-1017 would necessarily have to be attached to the policy, therefore the established rule or policy of the company in this respect would in no way be binding on the insured.

We do not agree with appellant's contentions and we think that the trial court quite properly rendered judgment for the insured. In our disposition of this case it is unnecessary to discuss the matter of reformation and the question of the alleged long-established rule and policy of the company with reference to the matter of risks for the reason that we are of the opinion that the room in which the seed corn was stored at the time of the fire constituted a granary within the common meaning and understanding of the word and within the meaning of the policy. It is true this room was attached to and was a part of the dwelling house but the evidence showed that for a number of years it had been used exclusively for the storage of seed corn and we see no reason why the company should escape liability merely because of the fact that it was

not a separate building distinct and removed from the rest of the house. The flooring had been reinforced and it was common knowledge among customers of the insured that he was using the room as a granary. Webster's New International Dictionary, 2d ed., Unabridged (1946 Reprint) defines a "granary" as being "a storehouse or repository for grain esp. after it is threshed or husked." 38 C. J. S. 977, defines the word "granary" as "a term denoting a building usually devoted to the storage of corn and grain; a corn house; a storehouse or repository of grain, after it is threshed."

We therefore hold that the room in which the seed corn was stored at the time of the fire constituted a granary, and the loss having occurred, the company is liable.

And finally, there is a further reason why we think that this judgment should be upheld. The question as to whether this was or was not a granary was raised in the lower court and while the court did not render findings of fact and conclusions of law, yet its general finding in favor of appellee carries with it an affirmative finding on the specific point. The court heard the evidence as to the description and use of this room as a granary, and its finding, being based upon competent, sufficient evidence, is binding upon this court on appeal.

No question is raised as to the propriety of the lower court's order with reference to attorney fees and its ruling will not be disturbed.

It therefore follows that the judgment of the lower court should be and the same is hereby affirmed.

Price, J. (dissenting): I am unable to agree with the majority of the court as to the proper disposition of this case. To me the proposition is very simple and amounts to this:

There is nothing unusual or ambiguous about this insurance contract—it merely provided fire insurance coverage *on seed corn in barn and granary, and not elsewhere!* Mistake or fraud is not pleaded by the insured—in fact, from the record it does not appear that there was any mistake or fraud on the part of any one so as to give rise to a reformation of the policy. Furthermore, this being a mutual fire insurance company, the ordinary rule of strict construction against the company has no application. (*Rickel v. Republic Mutual Fire Ins. Co.*, 129 Kan. 332, 282 Pac. 757, and authorities cited.)

The majority opinion rests on the proposition that the room in the insured's dwelling house constituted a "granary." I agree that a granary is "a storehouse or repository for grain, especially after it is threshed or husked" but in our decision I think we should be governed by the ordinary common meaning and acceptation of the term rather than by a literal, technical definition. It seems to me that the word "granary" in a fire insurance policy covering farm products, and particularly seed corn, means one of two things— either a separate building used for storing grain or else a portion or division of a barn or other *farm building*—and not an unused room of an occupied dwelling house with its increased fire hazards such as the evidence showed in this case. Suppose I have a horse which I keep in an unused and unfurnished room of my dwelling house. Does that fact make the room a barn or stable in the common, ordinary meaning of the words—notwithstanding that Webster defines a barn as "a building used for keeping horses, hay and feed, vehicles, etc."? Likewise, would the storage of hay, for instance, in such a room, for several years, make such room a mow or barn in the common, ordinary meaning of the words, and particularly as applied in fire insurance policies? Here the insured testified that—

"We had a fire on the farm on April 3, 1946, that destroyed my dwelling house and another small building."

When asked where the seed corn was stored at the time of the fire he replied:

"In the unused portion of our house, that we had not used for living purposes for a number of years."

He further testified:

"The house and the seed corn were completely destroyed. I had insurance on the dwelling, . . . My household goods were partly covered by insurance. . . . I did not use the barn for storage of grain after it was sacked and graded because there was no protection against mice or rats. . . . Such seed corn requires special care when stored in this room in the dwelling. . . . We have a building which we call our seed house, in which we do our processing but it is not all done there. I had two barns, a small granary, and a government bin of about 500 bushels capacity. There was a small bin that had been used for storage.

"At the time of the fire I had other seed corn, some of which was in the bins under the corn grader. That is the building which we call our seed house. I did not have any seed corn in the steel granary."

It seems clear to me that the testimony of the insured, of which

the foregoing are but a few excerpts, means one thing, and that is that the insured himself did not even consider this room of his dwelling house to be a "granary" in the common, ordinary meaning of the word.

It is of course unfortunate that the insured did not read his policy prior to the loss, but his negligence in that respect cannot be charged to the company. He allowed it to remain in the bank and did not look at it until after the fire. We are cited no law or rule which required the company to make an inspection before writing the policy. I cannot give any weight to the insured's theory that his seed corn was covered so long as it was located on his particular quarter section of land. There was nothing at all unusual about the insertion in this policy of the statement that the coverage was on corn stored "in barn and granary" for the very good reason that that is where corn is ordinarily stored and I cannot bring myself to the conclusion that this room constituted a granary.

Furthermore, since the construction of this policy presented a question of law I do not think that we are bound by the findings of the lower court on the proposition.

In my opinion this case should be reversed and judgment rendered for the defendant company.

WEDELL and PARKER, JJ., concur in the foregoing dissenting opinion.