ZIEBARTH and wife, Respondents, vs. FIDELITY & GUARANTY
FIRE CORPORATION, Appellant.

*February 9—March 7, 1950.*

For the appellant there was a brief by *Wolfe, O'Leary & Kenney,* attorneys, and *Kenneth M. Kenney* and *R. W. Wolfe* of counsel, all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

*Harry J. Weisfeldt* of Milwaukee, for the respondents.

FAIRCHILD, J. The judgment cannot be affirmed on the ground on which the trial court laid his decision. The policy in question was for a dwelling house. By referring to private structures appertaining to the dwelling house, its coverage was limited to buildings generally in the individual and private use of the owner. A car-repair shop which was open to the public was thus definitely excluded.

The trial court relied on *Cawker v. Meyer* (1911), 147 Wis. 320, 325, 133 N. W. 157, as authority for holding that respondents' garage was a "private structure" within the

policy. In the *Cawker Case* the plaintiffs operated a plant in their building to furnish light and heat to their tenants and sold the surplus to three of their adjoining neighbors. It was held that this did not constitute the plant a public utility. However, it was there pointed out that: "If the product of the plant is intended for and open to the use of all the members of the public who may require it, to the extent of its capacity, the fact that only one or two thereof consume the entire product renders the plant none the less a public utility." It is considered that the auto-repair shop operated by respondent, Otto Ziebarth, is within the latter (public) classification. The evidence shows that the services of the shop were open to the public. It is our conclusion that the use of the garage as an auto-repair shop open to the public destroyed its character as a private structure and excluded it from the coverage of the policy.

Respondents argue that the judgment should be affirmed because the trial court found that at the time the insurance policy was issued the appellant's agent knew of the use of the garage. Therefore, under sec. 203.13 (1), Stats., the company had knowledge of the use to which the building was put and with such knowledge issued the policy. Respondents, therefore, claim appellant had waived the right to claim that such use took the garage out of the terms of the policy. A study of the provisions of the policy shows that this contention must be resolved against respondents.

The policy is one written on respondents' dwelling house and allows the insureds to apply ten per cent of the amount of the policy on private structures appertaining to the house. The clause in question, then, is one relating to coverage, *i.e.*, the sum of risks which the policy covers. In this policy the coverage is only for the house and, at the option of the insureds, for private structures appertaining to the house. Since the garage is not a private structure, the terms of the policy as written simply do not cover it.

Respondents are relying on cases in which it has been held that knowledge by the insurer of facts which breach conditions of the policy and make it void constitutes a waiver of such breach. Those cases are specifically provided for in the statute (sec. 203.13 (1)). There is a clear distinction between knowledge of such facts and of facts which take certain items out of the coverage of the policy. *Fountain v. Importers & Exporters Ins. Co.* (1934), 214 Wis. 556, 252 N. W. 569; *Moe v. Allemannia Fire Ins. Co.* (1932), 209 Wis. 526, 244 N. W. 593. While, as pointed out in the *Fountain Case,* knowledge of facts taking certain items out of coverage of the policy may under certain circumstances constitute a waiver, it is not considered that this is such a case. In the *Fountain Case* the court found that, although the policy contained a clause excluding from coverage cars on which there were chattel mortgages, the intention was to cover the cars on which there were such incumbrances. The cars which were described in that policy were subject to liens. The agent who sold the insurance knew this. The court said at page 560: "It quite clearly appears, however, that the intention in the instant case was to cover the specific cars described in the policy. The court expressly found that the agent of the defendant had knowledge that 'Fleming financed the purchase and handling of the cars and held the title papers.' This was equivalent to finding that the agent had knowledge that the cars were in fact mortgaged. To permit the defendant to avoid liability under such circumstances would permit it to perpetrate a constructive fraud. The plaintiff intended to procure insurance. The agent intended to issue insurance. Both understood insurance was effected." Therefore, the contract was reformed to express the intention of the parties.

The facts in the case at bar are substantially different. The policy described only the dwelling house. There is no evidence of intent to cover anything else except "private structures" appertaining to the house. There is no evidence

of specific intent to cover the garage. It does not follow under these facts that there will be a fraud worked upon the insureds by excluding the garage from the coverage of the policy. The dwelling remained covered to the full amount. Therefore, the garage, not being a private structure, is not included within the coverage of the policy.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the complaint.