**The MANHATTAN FIRE AND MARINE INSURANCE COMPANY, Appellant,**

**v.**

**Sterling HOLLOWAY, Appellee.**

**No. 10987.**

Court of Civil Appeals of Texas.

Austin.

July 11, 1962.

Rehearing Denied Aug. 2, 1962.

Gay & Meyers, Austin, for appellant.

Black & Stayton, Austin, for appellee.

HUGHES, Justice.

This appeal is from a summary judgment against The Manhattan Fire and Marine Insurance Company in favor of Sterling Holloway for $4500.00, plus interest, for a fire loss sustained by Mr. Holloway on April 14, 1961, and found by the

Court to be within the coverage of an insurance policy issued to him by the Company.

The property destroyed by fire was built, but never occupied, as a servant's house. It was located 103' from the main dwelling, and was 30' 8" by 13' 6". It was divided into two parts by a solid wall. An area 6' by 12' was in use as a store room at the time of the fire. The remaining area was living quarters which at the time of fire, and for twenty months previously, was occupied by a paying tenant.

The main dwelling was built on a 29 acre tract owned by appellee about 6 miles west of Austin. A gate separates this property from the public road. About 125 yards inside the gate are rock columns or portals which tend to separate the dwelling and its premises from the remainder of the 29-acre tract. The servant's house is within this separated area. Such house is not physically connected with the main dwelling, except by utility lines, both houses being serviced through the same utility meters.

The fire which destroyed appellee's property originated several miles away, and is referred to as a "brush fire".

If appellee's servant's house was insured at the time of its loss by appellant, it must be so under the following provisions of the policy then in force:

"Dwelling Extension—At the option of the insured, insurance on a dwelling may be extended as excess insurance to the fences, drives, walks, yard fixtures, private garages, servants' houses, and, if used solely in connection with the occupancy thereof, other out-buildings on the premises of the dwelling, to the extent of their respective actual values, but the aggregate of such extension shall not exceed 10% of the amount of insurance on such dwelling. In the application

of this Dwelling Extension, boarding, rooming, fraternity, and sorority houses, and apartment buildings (containing not more than eight separate apartments) may be considered as dwellings."[1]

■ It is our opinion that the lost property was a servant's house and was covered by the policy issued by appellant.

It is true, the building was not occupied by a servant at the time of its destruction. Does this, or should this, alter its character?

The policy does not prohibit occupancy of the insured property by tenant. In fact, such occupancy is seemingly authorized, or at least contemplated by the condition suspending insurance coverage "While a described building whether intended for occupancy by owner or tenant is vacant beyond a period of thirty consecutive days."

The policy here also provided for suspension of insurance coverage " * * * While the hazard is increased by any means with the knowledge and control of the insured * * *."

■ There is no pleading or evidence here that the occupancy of the servant's house by a tenant instead of a servant at the time of its destruction increased either the risk assumed by appellant or the premiums covering such risk. It has been held that whether occupancy of property by a tenant increases the risk in a fire insurance policy is a question of fact. Dixie Fire Insurance Co. v. Henson, 285 S.W. 265, Tex.Com.App. If appellant desired to defeat recovery on this policy on the ground that its risk was more hazardous because the insured property was occupied by a tenant instead of a servant, it should have pleaded or offered proof of such defense in the summary judgment proceedings. Rule 94, Texas Rules of Civil Procedure.

1. The policy covered the time period 6–22–'57 to 6–22–'62.

Assuming that there is in the policy issued to and accepted by appellee a representation that the servant's house covered by the policy was occupied by a servant and not by a tenant, we believe the following rule of law to be correct and applicable:

"TIME TO WHICH INSURED'S STATEMENT AS TO USE AND OCCUPANCY RELATES.

"As a general rule, the insured's statements in this respect are not thereby made promissory or continuing warranties, but they only amount to representations or warranties that the property was used or occupied as stated at the time of such statement; that is, they are merely a warranty in praesenti. Thus the fact that the insured property is described in the policy as being used for a certain purpose does not constitute a warranty that there shall be no other use subsequent to effecting the insurance. In fact, in the absence of any express stipulation, no change which does not increase the risk will avoid the policy, although the contrary ordinarily would be the ruling if there was such a change as actually increased the risk." 8 Couch on Ins.2d, pp. 339–40.

A strong authority supporting the principle of the above text is Southern Nat. Ins. Co. v. Cobb, 180 S.W. 155, writ ref., San Antonio. There the court stated:

"It has been laid down as the rule in many cases that a clause in the application or policy stating the purpose for which the building is to be used is not a continuing warranty, but matter of description only, or, at the fartherest, only a present warranty that the house is being so used. Cooley, Briefs Law Ins. p. 1624 et seq., and authorities cited. There are other authorities to the effect that the description of the uses to which the insured building is being put is a warranty merely in praesenti, and is not a continuing warranty that the building shall be so used, and the mere falsity of the representation is not material unless the failure to occupy the building as represented occasions the loss. Joyce, Ins. Sec. 2101 et seq. A warranty that the building was being used as a sanitarium was not a warranty that it should be so used during the entire risk, or that the use or occupation should not be changed. There is no provision for forfeiture if the occupation was changed, * * *."

Since there was no provision in the policy voiding it for a change in the occupancy of the servant's house, and since its occupancy by a tenant did not enhance the hazard of fire nor was it, directly or indirectly responsible for the loss, and since the premium rate for the risk is not shown to be affected by tenant occupancy, we hold that such change in occupancy or use did not void the policy in suit.

Appellant takes the position that the actual use of the property at the time of its loss determines whether or not it was then a servant's house. Conceding that no case is to be found as supporting this position, appellant cites, as persuasive: Ziebarth v. Fidelity and Guaranty Fire Corp. of Baltimore, Md., 256 Wis. 529, 41 N.W.2d 632, Jeram v. Nationwide Mutual Fire Ins. Co., 4 A.D.2d 922, 166 N.Y.S.2d 833, and Hockens v. Republic Fire Ins. Co., 167 Kan. 17, 204 P.2d 773.

We have read these cases. Ziebarth holds that a fire insurance policy which provided, "The Insured may apply up to ten per cent (10%) of the amount specified for Item 1 to cover on private structures appertaining to the above described premises and located thereon." did not cover a garage used, at the time the policy was issued, to carry on the business of the insured, which was repairing automobiles for the public. We do not consider this case persuasive authority for the position taken by appellant because the garage was not a

"private structure" when the policy was issued although, presumably, neither was it a "private structure" when the loss occurred. Not being a "private structure", during the life of the policy, it was never covered by the policy.

Jeram held that a policy providing "The Insured may apply up to ten per cent (10%) of the amount specified for the principal Dwelling item to cover private structures appertaining to the described dwelling and located on the premises, but not structures used in whole or in part for mercantile, manufacturing or farming purposes nor any structure rented or leased to other than a lessee of the described dwelling. This exclusion does not apply to buildings used exclusively for private garage purposes." was held not to cover a garage used "for the storage of frozen foods intended for public sale, in a frozen food locker * * *." It is not disclosed in the opinion when this use occurred. In our opinion, this case does not persuasively support appellant's position.

In Hockens a farmer, whose family had diminished, converted, in 1941, the parlor in his house into a storage room for seed corn. In 1945 this corn was insured against loss by fire the policy describing it as "seed corn in barn and granary". The Court held the converted parlor was a "granary" within the meaning of the policy. The use of the parlor as a granary was constant throughout the life of the policy. We are not persuaded by this case to appellant's position. The subject of insurance here was corn, not the granary. Furthermore, the use of the "granary" did not change during the life of the policy.

We remain convinced that the authorities cited to sustain our ruling are not undermined by the cases appellant presents, and we adhere to our stated conclusion.

Having reached the conclusion that the destroyed property was a servant's house within the meaning of the policy and covered by it at the time of loss, it is unnecessary that we determine whether such property was an outbuilding used solely in connection with the occupancy of the main dwelling and hence covered by the policy, or whether appellant is estopped to deny liability for this loss because of the representation of its agent to appellee, long before the fire, that the servant's house was covered by the policy in suit.

The judgment appealed from is affirmed.