PRENTISS-WABERS STOVE COMPANY, Respondent and Appellant, vs. MILLERS MUTUAL FIRE INSURANCE ASSOCIATION OF ALTON, ILLINOIS, Appellants, and others, Respondents.

*December 6, 1926—May 3, 1927.*

*Insurance: Avoidance of policy by placing chattel mortgage on property insured: Subsequent mortgages: Policies on different interests not concurrent: Sufficiency of description of property mortgaged: Knowledge of insurance agent: When imputed to insurer: Finding agent not interested adversely to principal: Weight on appeal: Subrogation: Of insurer to mortgagees' interests.*

1. A description of mortgaged chattels as all "materials consisting of steel, iron, and brass, and including all materials on hand or that it may receive in the future" to a certain amount, is sufficient. p. 627.

2. The provision of lines 62–67 of the standard fire policy prescribed by sec. 203.01, Stats., avoiding the insurance as to insured property incumbered by a chattel mortgage, in the absence of a writing to the contrary attached to the policy, declares a rule of public policy binding on the parties. p. 627.

3. A finding that an agent writing insurance was not interested adversely to the insurers, being supported by the evidence, cannot be disturbed on appeal. p. 629.

4. Under sec. 209.08, Stats., if an agent of insurance companies has knowledge, at the time of the issuance of policies, of chattel mortgages on the insured property, such knowledge is imputed to the companies. p. 628.

5. Knowledge acquired by an insurance agent will not be attributed to a particular company and so prevent avoidance of its policy where he has acquired such knowledge in the

624 SUPREME COURT OF WISCONSIN. [MAY

Prentiss-Wabers S. Co. v. Millers M. F. Ins. Asso. 192 Wis. 623.

course of transacting business for other insurance companies. p. 628.

6. A policy on chattels issued to the first mortgagee is not avoided by a second mortgage made specifically subject to the first, the interest insured not being incumbered by the second mortgage. p. 630.

7. Policies, though paid for by mortgagees, having been taken out, as intended, direct to them, may not after loss be treated, as against the insurers, as taken out to the mortgagor with a loss-payable clause. pp. 631, 632.

*On rehearing:*

8. The policies so issued to the mortgagees are not concurrent with other mortgagor policies, although concurrent as to each other. p. 633.

9. Where insurance has been procured at the expense of the mortgagor and for the benefit of the mortgagee as well as himself, on payment of the loss the amount paid must be applied on the indebtedness. p. 634.

10. Where insurance companies denied all liability, both as to the mortgagor and the mortgagee of insured property, for both of whom policies had been taken out, and did not pay the loss to the mortgagee, the insurer's right of subrogation under sec. 203.04, Stats., did not exist. p. 634.

APPEAL from six separate judgments of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Reversed, with directions.*

Action upon policies of fire insurance. December 1, 1924, the *Northern Insurance Company of New York City,* hereinafter called the *Northern,* issued its policy number 122407 for $7,000, loss payable to C. D. Searls as trustee. Prior to the issuance of the *Northern* policy and on June 1, 1924, the *Stove Company* had given to C. D. Searls a bill of sale of "materials consisting of steel, iron, and brass, and including all materials on hand or that it may receive in the future to the amount of $7,000."

On January 9, 1925, the *Northern* issued a second policy number 122411, expiring January 9, 1926, in the sum of $4,000.

On January 9, 1925, the *Millers Mutual Fire Insurance Association of Alton, Illinois,* hereinafter called the *Millers,*

issued its policy number 651012, expiring January 9, 1926, in the sum of $4,000.

On January 9, 1925, the *Dubuque Fire Insurance Company*, hereinafter called the *Dubuque*, issued its policy number 1932043, expiring January 9, 1926, in the sum of $4,000.

On January 12, 1925, the *Stove Company* gave to R. S. Wiltrout a bill of sale "of materials for the manufacture of stoves and scooters, including all materials that may be owned by it, both raw or in process, or manufactured," it being made subject, however, to the prior sale of materials to the amount of $7,000 to C. D. Searls.

On February 25, 1925, the *Farmers Insurance Company of York, Pennsylvania*, hereinafter called the *Farmers*, issued its policy number 16709, expiring February 25, 1926, in the sum of $5,000. (Other property was covered by this policy but is not material here.)

On February 25, 1925, the *Concordia Fire Insurance Company of Milwaukee, Wisconsin*, hereinafter called the *Concordia*, issued its policy number 16598, expiring February 25, 1926, in the sum of $10,000 to R. S. Wiltrout as trustee.

On February 25, 1925, the *Marquette National Fire Insurance Company*, hereinafter called the *Marquette*, issued its policy number 28098, expiring February 25, 1926, in the sum of $4,500.

All of the policies were in the form known as the Wisconsin standard fire insurance policy and all of the policies covered the entire personal property of the plaintiff, consisting of stock, merchandise, and materials owned by the plaintiff company at the time of the fire, including that covered by the two bills of sale; that all of the policies covered the same identical property except the *Northern* policy for $7,000 did not cover manufactured stock. All of the insurance was procured by the plaintiff at its own

expense through G. D. Fritzinger, an insurance agent residing in the city of Wisconsin Rapids, who was the agent for all of the defendant companies at that place at all of the times material in this case.   Fritzinger had full knowledge of the execution and delivery of the bill of sale to Searls as of the time of its execution and delivery and of the Wiltrout bill of sale from February 25, 1925, at least, and knew all of the terms and conditions of each of said bills of sale and of all policies issued.   The Wiltrout bill of sale is dated January 12th, but does not appear to have been delivered until February 25th, although the evidence is confused on this point.

The property described in the policies was damaged by a fire which occurred on the 28th day of February, 1925, to the extent of $9,937.34.   Proofs of loss were made in due course, and on the 17th day of April, 1925, Searls assigned his rights as trustee under the *Northern* policy number 122407 to the plaintiff, and on the same day R. S. Wiltrout, trustee, assigned all his rights under the *Concordia* policy to the plaintiff.

At some time subsequent to the fire the plaintiff company discharged its liability upon the notes to secure the payment of which the Searls and Wiltrout bills of sale had been executed.   It is not disputed that the respective bills of sale were outstanding and in full force on February 28, 1925, the day on which the fire occurred.   The loss was prorated among all of the policies and judgment rendered against the—

| | | |
|---|---|---|
| Dubuque | for | $1,038 02 |
| Millers | " | 1,038 02 |
| Northern on Policy No. 122411 | " | 1,038 02 |
| Northern on Policy No. 122407 | " | 1,762 95 |
| Farmers | " | 1,297 53 |
| Marquette | " | 1,167 75 |
| Concordia | " | 2,595 05 |

—and from the judgments all of the parties appeal.

Prentiss-Wabers S. Co. v. Millers M. F. Ins. Asso. 192 Wis. 623.

*Chas. E. Briere* of Wisconsin Rapids, for the plaintiff.

For the defendants *Concordia Fire Insurance Company* and *Northern Insurance Company* there was a brief by *Arthur A. Mueller,* attorney, and *Emmet J. Horan,* of counsel, both of Milwaukee, and oral argument by *Mr. Mueller.*

For the defendants *Millers Mutual Fire Insurance Association* and others there was a brief by *Thos. H. Gill* of Milwaukee and *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Mr. R. B. Graves* and *Mr. Gill.*

The following opinion was filed January 11, 1927:

ROSENBERRY, J. Upon the trial as well as in briefs of counsel and upon the oral argument here it was freely conceded by all parties that the bills of sale executed by the plaintiff to Searls and Wiltrout were in legal effect chattel mortgages and should be treated and considered as such in determining the rights of parties.

It was argued on behalf of the *Concordia Company* and the *Northern Company,* which issued the so-called trustee policies, that the chattel mortgages were invalid because the description of the property mortgaged was ambulatory and indefinite. That contention must be overruled. It described all of the properties of the various kinds mentioned, and a description of that character is a sufficiently definite description.. 11 Corp. Jur. 461, note 57, and cases cited.

Sec. 203.01, Stats., lines 62–67, provides:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder."

Prior to amendment made by ch. 127, Laws of 1917, the entire policy was avoided if personal property insured became incumbered by chattel mortgage. This provision,

628    SUPREME COURT OF WISCONSIN.    [MAY

Prentiss-Wabers S. Co. v. Millers M. F. Ins. Asso. 192 Wis. 623.

which is statutory in character, declares a rule of public policy binding alike upon the insured and the insurer and avoids the insurance. *Kitch v. Northwestern Nat. Ins. Co.* 189 Wis. 378, 207 N. W. 716. See, also, *Molle v. Kewaskum Mut. F. Ins. Co.* 134 Wis. 404, 114 N. W. 798; *Bloomer v. Cicero Mut. F. Ins. Co.* 183 Wis. 407, 198 N. W. 287.

However, it is claimed by plaintiff in this case and by the *Northern* and *Concordia* companies that knowledge of the insurance agent, Fritzinger, of the existence of the chattel mortgages estops the *Dubuque, Millers, Marquette,* and *Farmers* from asserting the invalidity of their policies on that account.

Sec. 209.08 provides:

"Knowledge of an agent of a fire, casualty or marine insurance company at the time a policy is issued or an application made shall be knowledge of the company, and any fact which breaches a condition of the policy and is known to the agent when the policy is issued or the application made, shall not void the policy or defeat a recovery thereon in the event of loss."

However, knowledge acquired by the agent of an insurance company after the issuance and delivery of the policy is not imputed to his principal when not acquired by him while acting within the scope of his authority as agent of the company. *Bloomer v. Cicero Mut. F. Ins. Co.* 183 Wis. 407, 198 N. W. 287.

The companies issuing the four policies named, which will be hereinafter referred to as the owner policies, seek to avoid the effect of this rule by claiming that Fritzinger had an interest adverse to the companies in that he acted in a dual capacity in attempting to represent both the insurers and the insured. It appears that Fritzinger owned twenty-six and one-half shares of stock of the plaintiff company out of a total of 665 shares. It also appears that the manager of the plaintiff company consulted Fritzinger with respect

to the method which would be employed to secure Searls and Wiltrout as trustees and that it was pursuant to Fritzinger's advice that the transaction took the form it did. For some reason they chose to follow the method suggested by Fritzinger rather than have the policy issued to the company with loss payable to the respective trustees as their interest might appear.   In response to this contention the trial court found that—

"Fritzinger was not interested adversely to said defendant companies, or any of them, at any of the times herein referred to, and acted wholly and solely as the insurance agent of the defendant companies.
"That each and all of the policies affected by this action were so issued by the said Fritzinger, and the said plaintiff company had no other insurance of any kind on the property included in said policies."

While this finding is challenged it is supported by the evidence and cannot be set aside.   It appears, therefore, without dispute that the *Marquette* policy for $4,500, the *Farmers* policy for $5,000, and the *Concordia* policy for $10,000 were issued contemporaneously with full knowledge on the part of the companies issuing the same of the mortgage dated January 12, 1925, as well as of the mortgage of June 1, 1924, to C. D. Searls.   It is therefore considered and held that said policies were valid outstanding obligations at the time of the fire on February 28, 1925.

We come now to the consideration of the effect upon the policies issued on January 9, 1925, of the execution and delivery of the chattel mortgage dated January 12, 1925, namely, the policy of the *Northern* for $4,000, policy of the *Millers* for $4,000, and the policy of the *Dubuque* for $4,000.   While Fritzinger was the agent of these companies, he was transacting no business for them when, on the 25th day of February, 1925, the date when the *Concordia* policy was issued, he acquired knowledge of the chattel mortgage to Wiltrout.   Under such circumstances the companies for

whom he was transacting no business were not affected with such knowledge as he acquired in the course of transacting business for other principals under the rules referred to. We see no escape from the conclusion that the policies issued on January 9th as stated were avoided by the mortgage of January 12th upon the same property.

We shall next consider the effect of the execution and delivery of the Wiltrout chattel mortgage upon the policy of the *Northern* number 122407, issued December 1, 1924, to Searls as trustee. It is not contended by any one that Searls did not have an insurable interest in the property; that interest was measured by the amount of the loan to secure the payment of which the mortgage was given. The policy issued to Searls did not include manufactured stock. The mortgage given to Wiltrout did include such stock, but the liabilities of the respective companies are not affected thereby, except, of course, that the *Northern* under its policy issued to Searls cannot be made liable for loss on manufactured stock. It seems quite clear that the interest insured under the Searls mortgage was not conveyed or incumbered by the execution and delivery of the Wiltrout mortgage, which was made specifically subject to the Searls mortgage. Therefore the policy issued by the *Northern* on December 1st remains valid and in full force and effect.

It is, however, urged very strenuously that under the rule laid down in *Lumbermen's Nat. Bank v. Corrigan,* 167 Wis. 82, 166 N. W. 650, all of the policies are valid and concurrent. The argument is to this effect: both Searls and Wiltrout had become indorsers upon outstanding obligations of the plaintiff company; that it was the desire and purpose of the company and the mortgagees and the insurance companies to protect these guarantors; that the sole object and purpose of the execution and delivery of the bills of sale was to enable the grantors to be protected under policies of insurance; that the plan adopted was sug-

gested by Fritzinger and accepted by the *Stove Company* and the mortgagees in the belief that it was necessary for the *Stove Company* to convey to the trustees an insurable interest in order that a valid insurance might be issued, both parties apparently overlooking the simpler method by which the policies could have been made payable to the company with a loss-payable clause. It is argued, therefore, that under the ruling in the *Lumbermen's Nat. Bank Case* the policies should be considered as if written in the name of the company with a loss-payable clause to each of the mortgagees as their respective interests might appear. It is considered that the *Lumbermen's Nat. Bank Case* is not authority for the position taken by counsel. In that case no question was raised as to the validity of the policies. The case was tried upon the theory that a mutual mistake had been made in inserting the name of the insured, and this court held that the mere failure of the trial court to formally adjudge a reformation did not constitute grounds for a reversal. Upon what grounds could the right of reformation be based in this case? There was no mutual mistake, the parties did exactly what they intended to do,—they simply failed to take into account the legal consequences of their intentional acts. No claim of reformation was made in this case. None very well could be made. It is immaterial that the plaintiff company paid the premium upon the insurance issued for the benefit of mortgagees. It is a fact that has little if any bearing upon the intention of the parties. The Searls trustee policy protected Searls' interest. It was not affected by the subsequent mortgage to Wiltrout. In certain contingencies it might have been very advantageous to Searls' trustee to have the policy so written. It appears very clearly that it was the desire of all parties to have the mortgagees fully protected. A policy issued to the mortgagor with a loss-payable clause is subject to forfeiture because of violation of its conditions by the mortgagor; not

so a policy issued directly to the mortgagee. *Brecht v. Law Union & C. Ins. Co.* 160 Fed. 399, 18 L. R. A. N. s. 197, note on p. 205. The insured cannot be permitted to take one kind of insurance and after loss for his own benefit claim that it is something else.

It is claimed further that Fritzinger collected the premium on the policies issued January 9th, subsequent to the date of the Wiltrout mortgage. This, however, does not clearly appear from the record. While the Wiltrout mortgage is dated January 12th, the policy of the *Concordia* issued to secure Wiltrout is dated February 25th, six weeks later. Even if it should appear that in the ordinary course of business Fritzinger had extended credit and that he had received from the insurance the amounts of the premium subsequent to the date of the execution and delivery of the Wiltrout mortgage to his knowledge, it is not perceived how this could have any effect upon his principal. He acquired no information with respect to the Wiltrout mortgage while discharging any duty or obligation which he owed to them. Such information as he acquired he acquired in relation to the execution and delivery of the policy dated February 25th.

Holding as we do that the chattel mortgages are valid, it is apparent that the mortgagee policies are not concurrent. They are issued upon different and distinct interests. For the reasons stated we hold the policies issued December 1, 1924, to Searls, trustee, to be valid; policies issued by the *Dubuque, Millers,* and the *Northern,* dated January 9th, to be avoided by the execution and delivery of the Wiltrout mortgage; that the policies issued by the *Farmers* and the *Marquette* on February 25th were issued with full knowledge of the Searls and Wiltrout mortgages and are therefore valid but not concurrent. We hold that the policy issued by the *Concordia* dated February 25th to Wiltrout, trustee, is valid, but not concurrent either with the policy issued by the *Northern* on December 1st or with the policies issued

by the *Marquette* and the *Farmers* on February 25th, being upon different interests. We hold that the plaintiff by assignment is vested with all the rights of the mortgagees with respect to the policies issued by the *Northern* on December 1st and the *Concordia* dated February 25th.

*By the Court.*—The judgments appealed from are reversed, and the cause remanded with directions to enter judgment in the respective cases as indicated in this opinion.

The following opinion was filed May 3, 1927:

## On rehearing.

PER CURIAM. By way of a motion for rehearing it has been called to the attention of the court that some questions remained undisposed of by the opinion as filed. It is stated in the opinion:

"The policies issued by the *Farmers* and the *Marquette* on February 25th were issued with full knowledge of the Searls and Wiltrout mortgages and are therefore valid but not concurrent."

Counsel correctly interpret this as meaning not concurrent with other mortgagor policies. They are concurrent as to each other.

On behalf of the mortgagee policies it is argued that they are policies of indemnity and that the insurers under those policies are entitled to subrogation; that the debt having been satisfied there is nothing to subrogate them to, and for that reason the plaintiff mortgagor cannot recover.

The standard policy contains the following clause in relation to subrogation:

"If loss or damage is made payable, in whole or in part, to a mortgagee not named herein as the insured, this policy may be canceled as to such interest by giving to such mortgagee a ten days' written notice of cancellation. Upon failure of the insured to render proof of loss such mortgagee shall, as if named as insured hereunder, but within sixty

days after notice of such failure, render proof of loss and shall be subject to the provisions hereof as to appraisal and times of payment and of bringing suit. *On payment to such mortgagee of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's right to sue; or it may pay the mortgage debt and require an assignment thereof and of the mortgage.*"    Sec. 203.04, Stats.

All of the policies (both mortgagor and mortgagee) were written by a single agent who was fully informed of the purposes of all parties to the transaction. In fact, it was upon his advice and suggestion that the transaction took the form that it did. The express desire of the mortgagor was to secure the mortgagee against loss by fire and at the same time protect to that extent its own interest. Upon the advice of the agent, the bill of sale was executed and the policies issued in the name of the mortgagee. The mortgagor procured and paid the premium upon all of the various policies.

It seems to be well established that where insurance has been procured at the expense of the mortgagor and for the benefit of the mortgagee as well as himself, upon payment of a loss the amount paid must be applied upon the indebtedness. 11 A. L. R. 1296, par. 4, col. 2, and cases cited; 118 Am. St. Rep. 970, note, "Insurance at Expense of Mortgagor;" *Baker v. Monumental Sav. & L. Asso.* 58 W. Va. 408, 52 S. E. 403, 3 L. R. A. N. s. 79; 5 Joyce, Insurance (2d ed.) p. 5895, § 3556; *Pendleton v. Elliott,* 67 Mich. 496, 35 N. W. 97; 41 A. L. R. 1274; *Burton-Lingo Co. v. Patton,* 15 New Mex. 304, 107 Pac. 679, 27 L. R. A. N. s. 420; 26 Corp. Jur. pp. 455–461, § 625, and cases cited.

Here the insurance companies not only did not pay the

loss to the mortgagee but denied all liability both as to the mortgagee and the mortgagor.

For these reasons we conclude that the right of subrogation does not exist under the facts in this case.