Estreen, Appellant, vs. Fire Association of Phila-delphia, Respondent.

*November 11—December 6, 1938.*

For the appellant there was a brief by *Lehner & Lehner* and *Adolph P. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

For the respondent there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *R. E. Puchner.*

FOWLER, J. As more particularly appears from the foregoing statement of facts, the action is brought on a contract insuring the automobile of plaintiff against loss through "accidental collision and upset" which expressly provides that the insurer is "not liable for loss or damage" to the automobile sustained while "subject to" any chattel mortgage other than one specified in the contract. The loss for which recovery is sought was so sustained. This provision is plainly one of coverage. *Moe v. Allemannia Fire Ins. Co.* 209 Wis. 526, 244 N. W. 593. Therefore, as ruled by the circuit court, there can be no recovery.

The plaintiff contends that the provision above referred to was only a continuing warranty and that under sec. 209.06, Stats., breaches of warranties do not void policies of insurance unless "made with [actual] intent to deceive" or unless they "increased the risk or contributed to the loss." But, as stated in the *Moe Case,* the clause of the policy referred to by the plaintiff as a warranty does not warrant or promise that another mortgage would not be put upon the automobile. It evidences an agreement that if the property should be subject to a second mortgage when injured by collision or upset the insurer would not be liable for the loss.

The plaintiff next contends that because the finance company collected an insurance premium of $21 from him it collected it for the defendant, and under sec. 209.05, Stats., the finance company thereby became the agent of the insurer; and that as the plaintiff informed the finance company of the execution of the subsequent mortgage it informed the insurer of it, as notice to the agent is notice to the principal; and that as the insurer might under the terms of the policy cancel it whenever it wished, it was obligated to cancel it if it wished to avoid liability on it. This contains two *non sequiturs.* The finance company did not collect the premium for the in-

surer, but collected it for itself as it was directly liable for it to the insurer, and as the automobile was not covered by the policy when the loss occurred the insurer was not required to do anything to relieve itself from liability because no liability existed.

The plaintiff claims that the notice of insurance and the insurance policy are ambiguous. As to this it suffices to say that we perceive no ambiguity in either. Anyhow, there is no possible room for argument as to ambiguity of the clause above referred to as the coverage clause in view of the holding in the *Moe Case, supra,* and that clause controls the disposition of the case.

It is urged that the policy does not conform to the provisions of secs. 203.06 (1) and 204.31, Stats. The former relates to the standard statutory fire insurance policy, the latter to the standard statutory accident and health insurance policy. The point suggested seems to be that the provision in these statutes that the standard policies referred to therein shall conform as to "size of type" with the printed forms on file in the office of the insurance commissioner implies that sizes of type used in policies other than those covered by the statutes cited should be the same as that of the printed forms of the policies included in the statute. Maybe that type should be used that is of readable size in the controlling provision of a policy in suit. But the controlling coverage provision in the policy here involved is in "8-point" type, and is plainly readable. It is on the back of the policy, but the following is printed in blackface "lower cap." type at the bottom of the face of the policy: "This policy is subject to the additional conditions printed on reverse hereof," and the two words "additional conditions" are printed in blackface "upper cap." type. The "8-point" type on the back of the instant policy is indistinguishable in size by the eye from the "8-point" type in the printed form of the standard fire insur-

ance policy on file in the insurance commissioner's office containing the "stipulations and conditions of policy" which are printed on the back of the standard form policy, and the reference on the face of the standard policy incorporating the "stipulations and conditions" on the back thereof is not in blackface caps but in the same type as the rest of the face of the policy where capitals are not used. We perceive nothing in the printing or location of the controlling coverage clause in the instant policy that is deceptive, misleading, or concealing and nothing to except or relieve the plaintiff from its manifest effect.

If the force of the policy depended on the printed notice of its terms sent to the plaintiff, the case might be different. There is nothing objectionable in either the matter or the printing on the face of the notice. The coverage clause here involved is printed on the back of the notice. At the top of the back of the notice there is printed in blackface "lower cap. 8-point" type "Provisions of the open policy under which the automobile referred to herein has been insured and definition of perils." This is the same type which heads the back of the standard form fire insurance policy. There is a statement at the bottom of the face of the notice printed in "8-point" type that "the insurance referred to herein is made and accepted subject to all conditions, stipulations, provisions, exclusions, and warranties contained and set forth in the said open policy or set forth herein, which are a part of said open policy and on the back hereof." The matter on the back of the notice including the controlling coverage clause of the instant policy is printed in type of size less than "6 point," and while readable by the normal eye upon close and careful inspection, is so minute that its use might perhaps be properly prohibited by statute in any contract, and might perhaps be held to affect the validity or inferable meaning of a printed form of contract using it, if a party were shown

to have been lulled into not reading it by the size of the type, and the other party to the contract were under obligation to deliver the contract to him or furnish him with a duplicate or copy thereof or inform him of the terms of it. As to this we intimate no opinion. But from the nature of the contract, the circumstances of its procurement, and the fact that the finance company was a coinsured with the plaintiff, we perceive nothing in the evidence or the circumstances to indicate that the insurer was under any obligation to the plaintiff in any of these respects, and nothing to indicate that the insurer sent or furnished the notice sent to the plaintiff or had any knowledge of its contents or format. We are therefore of the opinion that the insurer is not responsible for any insufficiency or defect in the type used in the notice sent to the plaintiff if there is any.

*By the Court.*—The judgment of the circuit court is affirmed.