BRADACH, Respondent, vs. NEW YORK LIFE INSURANCE COMPANY, Appellant.

*December 5, 1951—January 8, 1952.*

For the appellant there were briefs by *Bie, Welsh, Trowbridge & Wilmer,* and oral argument by *George Edward Bills,* all of Green Bay.

For the respondent there was a brief by *Fisher, Reinholdt & Peickert,* attorneys, and *H. D. Anderson, Jr.,* of counsel, all of Stevens Point, and oral argument by *Mr. Anderson* and *Mr. Clifford W. Peickert.*

CURRIE, J.    The life insurance policy involved in this action is of the type that is known as an absolute ownership policy wherein the plaintiff is the beneficiary and all incidents of ownership are vested in the plaintiff and not in Giese, the insured.

At the trial the original policy was offered in evidence by the plaintiff. A photostatic copy of the application for the policy was attached thereto and by the terms of the policy was made a part thereof. The application consists of two parts, Part I and Part II. Part I was dated June 11, 1949, and purported to be signed by both the plaintiff and Giese, and contained the following provision:

"That all statements, representations, answers, and agreements made in writing over proposed insured's signature in connection with this application, including those made before any medical examiner of the New York Life Insurance Company (hereinafter called "Company"), shall form a part hereof, and that the company believing them to be full, complete, and true shall rely and act upon them accordingly."

Part II of the application is headed "Answers to the medical examiner," and purports to have been signed by Giese on July 8, 1949, before a medical examiner. One of the questions in Part II of the application was, "Have you ever been found to have a high blood pressure?" Another question was, "Have you ever had or ever consulted a physician or practitioner for any ailment or disease of the heart, blood vessels, or lungs?" Both questions were answered "No."

The undisputed testimony shows that the insured, Giese, was treated by a physician for hypertension for six or seven

months prior to July 8, 1949, the date of the medical-examination part of the application. Giese's death certificate shows that he died on May 11, 1950, of a coronary occlusion and that hypertension was a contributing cause of his death. A physician testified that the false answers of the insured Giese in the medical-examination part of the application increased the risk, but even without such testimony such conclusion would be reached as a matter of law under the facts present here.

The defendant contends that under the provisions of sec. 209.06 (1), Stats., as construed in *Demirjian v. New York Life Ins. Co.* (1931), 205 Wis. 71, 236 N. W. 566, inasmuch as such false answers of the insured increased the risk, the trial court, as a matter of law, should have held that the policy was voided and should therefore have granted defendant's motion for a directed verdict dismissing the complaint. Counsel for the plaintiff, on the other hand, while apparently not taking issue with the principle of law contended for by the defendant, urges that the defendant has failed in its proof upon the affirmative defense pleaded in its answer, because it offered no evidence that Giese had actually signed the application for the policy containing such false answers.

It is true that there is no evidence in the record that Giese actually signed either Part I or Part II of the application for the policy. The crucial issue on this appeal, therefore, is whether the plaintiff is bound by the false answers in Part II of the application in the absence of any proof that the insured Giese ever signed such portion of the application containing these false answers.

The plaintiff testified that the policy was delivered to him about July 14, 1949, and he did not examine the same or read it over, except to glance at the first page and note the amount of the policy and who was designated as beneficiary, and then had placed it in the partnership safe where it had

remained until Giese's death. The plaintiff never noticed prior to Giese's death that photostatic copies of Parts I and II of the application were annexed to the policy.

In *Bostwick v. Mutual Life Ins. Co.* (1903), 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, it was held that if a person receives a policy of insurance ostensibly in response to his signed application therefor, he is bound as a matter of law to examine the policy within a reasonable time after it is received by him, and if he fails so to do he will be held to have accepted the policy as satisfying his application, so as to be precluded from thereafter rescinding the same for a cause which he would have discovered if he had read the policy, in the absence of any showing that he was induced not to read the policy by false representations of the insurance company's agent made at the time of the delivery of the policy.

This court held in *Barly v. Public Fire Ins. Co.* (1931), 203 Wis. 338, 234 N. W. 361, that where the plaintiff insured sought reformation of an insurance policy because of certain provisions thereof not being in accord with the prior verbal agreement of the parties, reformation will not necessarily be denied because of plaintiff's failure through inadvertence to have promptly read the policy. However, in the present case the plaintiff is not claiming any mutual mistake or seeking reformation of the insurance contract, but bases his cause of action upon the policy in the form in which the same was issued to him. Therefore, *Barly v. Public Fire Ins. Co., supra,* does not limit the rule of *Bostwick v. Mutual Life Ins. Co., supra,* in so far as the rule of the latter case is applicable to the facts in the instant case.

The rule, that the owner of a policy of insurance who accepts a policy and without seasonably reading the same is bound by the terms of the policy (at least in the absence of fraud or mutual mistake), was adhered to in the recent decision of *United Pac. Ins. Co. v. Northwestern Nat. Ins.*

*Co.* (10th Cir. 1950), 185 Fed. (2d) 443, 447. In this recent federal case a public liability insurance policy had been issued to one Ogden who carried on two distinct types of business in the insured premises, but the policy covered the operations of one of the two businesses and excluded the other. Ogden contended that his agreement with the insurance company called for coverage as to both businesses. In its decision the court said:

"Neither can Ogden escape the effects of these provisions by not having read the policy when it was delivered to him and thus failing to discover that it did not contain the broad coverage for which he now contends. It was his duty to read the policy when it was delivered to him and he is charged with knowledge of its provisions, notwithstanding his failure to do so."

In support of such holding that one who does not read a policy when it is delivered to him is charged with the knowledge of its provisions, the federal court cited the following cases:

"*Madsen v. Prudential Ins. Co.,* Sup., 35 N. Y. S. (2d) 607; *Minsker v. John Hancock Mutual Life Ins. Co.,* 254 N. Y. 333, 173 N. E. 4, 81 A. L. R. 829; *Taylor v. American Liability Co.,* 6 Cir., 48 F. (2d) 592; *Rinker v. Aetna Life Ins. Co. of Hartford,* 214 Pa. 608, 64 A. 82."

The case of *Minsker v. John Hancock Mut. Life Ins. Co.* (1930), 254 N. Y. 333, 338, 173 N. E. 4, so cited, is an interesting one because decided when the eminent jurist, BENJAMIN N. CARDOZO, was chief judge of the New York court of appeals, and he concurred in the unanimous decision of the court. The court in that case called attention to the fact that since 1907 the statutes of New York have required life insurance companies to attach to their policies a copy of the application, and in its decision stated:

"When an insured receives a policy, it is his duty to read it or have it read, and if an application incorporated therein

does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected. In such circumstances a recovery will no longer be permitted because the medical examiner incorrectly recorded the applicant's answers or because the insured was unable to read or neglected to read the policy."

Under the authority of the foregoing cases it is our conclusion that the plaintiff, having been furnished with a policy which had attached to it photostatic copies of two parts of the application which purported to bear the signature of Giese, the insured, the plaintiff had a duty to examine the policy (including these attached photostatic copies) when he received the same and to protest to the insurance company if the purported signature of Giese appearing at the bottom of Parts I and II of the application was not actually Giese's signature; and that such failure of the plaintiff to protest now precludes him from questioning the authenticity of such signature.

In any event it is difficult to see how plaintiff would have bettered his case by attempting to prove that the purported signature of Giese was not genuine. If the plaintiff were to succeed in such an attempt, the defendant insurance company would then have an additional ground for claiming the insurance contract was void inasmuch as its contract is predicated upon Giese, the insured, having signed Part II of the application containing the answers to the medical examiner. If Giese had not so signed, the defendant insurance company could not be held liable on the policy. In *Wells v. Great Eastern Casualty Co.* (1917), 40 R. I. 320, 322, 101 Atl. 6, the plaintiff in seeking to recover on a life insurance policy, claimed the insured never signed the application containing the false representations in the medical-examination portion thereof, and the court said:

"The obligation of the insurer is based upon the existence of an application binding upon the insured. If no application

existed, containing the agreements and statements referred to in the policy, that consideration upon which the policy was issued was lacking and the plaintiff's action based upon the policy should fail."

Counsel for plaintiff cites sec. 328.25, Stats., which provides:

"When any written instrument constitutes the subject of the action or proceeding or when the signing of such instrument is put in issue and the instrument purports to have been signed, the instrument itself is proof that it was signed until denied by the oath or affidavit of the person by whom it purports to have been signed or by a pleading duly verified. *This section does not extend to an instrument purporting to have been signed by a person who died before proof is required.*"

This statute has no application to the facts in this case because no "proof is required" as to the genuineness of Giese's signature to the application in order for the defendant to prevail upon the defense raised by it in this action for the reasons hereinbefore stated.

Plaintiff points to the fact that in most life insurance cases which have reached the courts the insured has been the purchaser and owner of the policy, and urges that there are stronger reasons for holding that a policy is invalidated by false statements in the application in those cases than in the instant case where a person other than the purchaser or owner of the policy is the insured. No authority is cited in support of such contention, and sec. 209.06, Stats., makes no distinction between the case where the insured is the purchaser and owner of the policy and where he is not. Each life insurance company undoubtedly has well-defined rules as to the health requirements of persons it is willing to insure at its standard rates. If it is induced by false statements in the medical portion of a policy application to insure someone whom it would be barred from insuring

under its rules, and such false statements have increased the risk, there would seem to be no logical reason why it should not be permitted to raise such facts as a defense regardless of whether the insured who made the false statements is the purchaser or owner of the policy, or whether such owner is his wife, partner, corporate employer, or other third person.

Because in the instant case the false answers of Giese, the insured, to some of the questions in the medical-examination portion of the application for the policy increased the risk, and the plaintiff is precluded from questioning the genuineness of Giese's signature to the application, the trial court should have granted defendant's motion for a directed verdict.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.