EMMCO INSURANCE COMPANY, Appellant, vs. PALATINE INSURANCE COMPANY, LTD., Respondent.*

*March 2—May 5, 1953.*

* Motion for rehearing denied, with $25 costs, on July 3, 1953.

560

For the appellant there was a brief and oral argument by *Alan Shafrin* of Milwaukee.

For the respondent there was a brief by *Wolfe, O'Leary & Kenney* of Milwaukee, and oral argument by *H. O. Wolfe*.

CURRIE, J. As found in the trial court's findings of fact, the plaintiff insurance company, by payment of the entire loss to Frese, became subrogated to any rights Frese then had against the defendant insurance company upon the policy issued by the latter. Therefore, the issues presented on this appeal must be determined on the same basis as if the insured himself had brought suit on the policy to recover for his loss.

In this case we have a situation in which the defendant insurance company seeks to avoid its policy by showing that a statement written into the policy by its own agent, without any investigation of the facts and without making any inquiry

of the insured, was false and by reason thereof there was no coverage. The authorities almost unanimously hold that where an agent of an insurance company writes a statement of fact into an application for a policy without making inquiry of the insured, or relying on any information supplied by the insured, the company is precluded on the theory of either waiver or estoppel from showing the falsity of such statement in order to avoid liability upon the policy. The fact that in the instant case the statement was written into the policy itself, instead of an application for a policy, would not differentiate the case at bar so as to make the principle announced by such authorities inapplicable.

The general principle of law applicable to such a state of facts as we have in the instant case is well stated in 29 Am. Jur., Insurance, p. 641, sec. 844, as follows:

"In a number of cases it has been held that an insurer cannot rely upon the falsity of answers in an application where such answers were inserted by an agent of the insurer engaged in preparing the application, entirely on his own motion and without the knowledge of or the direction of an inquiry to the insured. An insurer is accordingly estopped to assert the falsity of answers where the application is made out by the agent from sources of information other than the insured or an examination of the property, and where he assures the applicant that it has been prepared according to the rules and regulations of the insurer."

To like effect is 45 C. J. S., Insurance, p. 733, sec. 728:

"The agent of an insurance company must act in good faith toward his principal, and do nothing to militate against its interest, giving to his principal such information with respect to the hazards as by honest industry he can procure, and as a general rule insurer will not be permitted to avoid the policy by taking advantage of any misstatement, misrepresentation, or concealment, of a fact material to the risk, which is due to the mistake, fraud, negligence, or other fault of his agent and not to fraud or bad faith on the part of insured; and this is so although the company would not have

issued the policy had truthful statements been made. *The rule applies where the agent himself makes or fills in the application, without the authority of insured, with information obtained from a source other than insured, or without propounding any questions to insured."* (Emphasis supplied.)

A case directly in point is the very recent one of *Flanagan v. Sunshine Mut. Ins. Co.* (1950), 00 S. D. 000, 41 N. W. (2d) 761. The plaintiff in such case sought to recover under an automobile policy of insurance for damages occasioned by accidental upset. Plaintiff had financed the purchase of the insured car by means of a conditional sales contract held by a finance company. The assistant manager of such finance company telephoned one Holm, agent for the defendant insurance company, and requested a policy of insurance on the car. Holm filled in a written application for the policy which was not signed by either the plaintiff or by a representative of the finance company. Item 6 inquired as to the sole ownership of the car, Item 7 as to the amount of any lien, mortgage, or incumbrance, and Item 8 as to whether any automobile insurance of the insured had been canceled during the previous year. The blank spaces in Items 6, 7, and 8 were left blank when Holm mailed the unsigned application to the defendant company. The company then issued the policy, the first page of which was a copy of the application, but as issued the word "None" had been typed in the blank spaces in Items 6, 7, and 8. The South Dakota supreme court affirmed a judgment for plaintiff and declared (41 N. W. (2d) at p. 763):

"The fact that insurance company inserted the word 'None' in the blank spaces of the application as it appears in the policy shows that the company considered the questions asked in Items 6, 7, and 8 of the original application as unanswered. The insurance company failed to make any further inquiry in regard to ownership, incumbrances, or the previous cancellation of other insurance on the car, and

this amounted to a waiver of the conditions of the policy relating to these subjects."

In another very recent case, that of *Charlton v. Wakimoto* (1950), 70 Idaho, 276, 282, 216 Pac. (2d) 370, the Idaho court stated:

"Where the answers in an application are inserted by the agent of the company of his own motion, and without knowledge, inquiry, or direction of the insured, the company cannot thereafter rely on such false statements in avoidance of the policy. 29 Am. Jur. p. 641, par. 844; *Yoch v. Home Mutual Insurance Co.* 111 Cal. 503, 44 P. 189, 34 L. R. A. 857; *Roe v. National Life Insurance Association,* 137 Iowa, 696, 115 N. W. 500, 17 L. R. A., N. S., 1144; *Donahue v. Mutual Life Ins. Co. of New York,* 37 N. D. 203, 164 N. W. 50, L. R. A. 1918A, 300, 4 Couch on Insurance, par. 842K, p. 2756."

The Wisconsin case which most nearly approaches the fact situation in the instant case is that of *Collum v. National Fire Ins. Co.* (1923), 181 Wis. 425, 426, 195 N. W. 333. That case involved an insurance policy on a motor truck. The printed form of the policy contained this provision, "The automobile described is fully paid for by the insured and is not mortgaged or otherwise incumbered, except as follows." In a blank space following this recital was written in, by a typewriter, the words "No exceptions." The insured made no written application for the insurance and at no time represented to the agent that there was no incumbrance upon the truck. The truck was burned during the life of the policy. The company refused to pay the amount of the insurance because of a breach of the warranty as to the vehicle being unincumbered. This court held that the insured was entitled to recover and in the opinion quoted from *Vankirk v. Citizens' Ins. Co.* (1891), 79 Wis. 627, 630, 48 N. W. 798, as follows:

"Collier [the insured] not having been questioned concerning incumbrances on the property, and it having been found by the court on sufficient evidence that he did not intentionally or fraudulently suppress the fact, it must be held on the authority of *Alkan v. N. H. Ins. Co.* 53 Wis. 136 [10 N. W. 91], that his failure to disclose the existence of the mortgage does not invalidate the policy. The rule there adopted, and which is applicable here, is thus stated in Wood on Insurance, 388: 'When no inquiries are made, the intention of the assured becomes material, and to avoid the policy it must be found, not only that the matter was material, but also that it was intentionally and fraudulently concealed.'"

It is urged in the dissenting opinion that liability against the defendant insurance company in the instant case cannot be predicated upon waiver because of the following policy provision, ". . . *nor shall the terms of this policy be waived or changed, except by indorsement issued to form a part of this policy,*" which is part of the standard policy provision prescribed by sec. 203.01, Stats. A plain reading, however, of such policy provision would seem to lead to the inescapable conclusion that the "waiver" which such clause had reference to is a waiver after the policy has become effective.

In the case of *Hessler v. North River Ins. Co.* (1925), 211 App. Div. 595, 598, 207 N. Y. Supp. 529, the appellate division of the New York supreme court construed a similar policy provision and stated:

"The clause in the policy which provides that the local agent cannot waive any provision thereof unless in writing indorsed upon or attached to the policy has no application. That applies to the policy only after it is issued and not to waiver or estoppel before the policy becomes effective."

The Michigan supreme court in *Crouse v. Hartford Fire Ins. Co.* (1890), 79 Mich. 249, 254, 44 N. W. 496, had before it a policy provision which provided that no agent "shall be held to have waived any of the terms and conditions

of this policy, unless such waiver shall be indorsed hereon in writing." The court in construing such provision stated:

"The restriction upon the agent, being in the policy, and not in the application, cannot be construed to refer to the acts or knowledge of the agent prior to the delivery of the policy."

This court had such standard policy provision as to waiver before it in *Spohn v. National Fire Ins. Co.* (1926), 190 Wis. 446, 209 N. W. 725; *Stillman v. North River Ins. Co.* (1927), 192 Wis. 204, 212 N. W. 67; and *Frozine v. St. Paul F. & M. Ins. Co.* (1928), 195 Wis. 494, 218 N. W. 845. However, in all of those cases alleged waiver on the part of the insurance company's agent was based on acts or knowledge of the agent occurring after the issuance of the policy. No Wisconsin case has been brought to our attention where we have held that such policy provision related to acts of the agent in negotiating or writing a policy. In the instant case the act of the agent in writing the word "None" into the policy in the blank space, which was provided in the policy for inserting the amount of any incumbrance, did not waive the provision of the policy with respect to there being no coverage if there were incumbrances other than those listed in the policy, but constituted a waiver of the truth of the answer so inserted. The company therefore is bound by such answer.

Regardless of whether the defendant insurance company can be held liable on the theory of waiver there would seem to be no question but that it should be held under the facts of this case to be estopped from asserting the falsity of the answer "None," inserted by its own agent, without investigation and without contacting the insured. Under such estoppel the defendant is prevented from showing that there was an existing incumbrance but is bound by the insertion made by its own agent in the policy that there was no in-

cumbrance. It has been suggested that the failure of Frese, the insured, to read his policy and to discover that a false answer had been inserted by the defendant's agent in the blank with respect to incumbrances constitutes negligence which bars him from invoking the doctrine of estoppel. However, under the decisions of this court, failure to read the policy does not constitute such lack of diligence or negligence as to bar the insured from invoking the principle of estoppel against the defendant insurance company. The cases of *Collum v. National Fire Ins. Co., supra,* and *Taluc v. Fall Creek Farmers Mut. F. Ins. Co.* (1931), 203 Wis. 319, 234 N. W. 364, are decisive on this point.

In *Collum v. National Fire Ins. Co., supra,* Mr. Justice OWEN, in his opinion stated (p. 427):

"It is claimed by the defendant that the insured was required to know the terms of his policy and that his retention thereof with such warranty therein binds him thereto.

"There is a spirited conflict among the authorities as to whether an insured may recover under such circumstances. The question is exhaustively considered by the Minnesota supreme court in *Parsons, Rich & Co. v. Lane,* 97 Minn. 98, 106 N. W. 485, 4 L. R. A., N. S., 231, where it is held that the plaintiff may not recover. It is also quite as thoroughly considered by the Indiana supreme court in *Glens Falls Ins. Co. v. Michael,* 167 Ind. 659, 74 N. E. 964, 8 L. R. A., N. S., 708, where it is held that the plaintiff may recover. A perusal of these two cases will supply the investigator with the reasons and authorities upon which the conflicting conclusions rest. The question would be an interesting albeit perhaps a troublesome one were we permitted or required to consider it as an original proposition in this court. . . .

"It seems to be firmly intrenched in the jurisprudence of this state and aligns this court with those holding that an insured may recover on an insurance policy under circumstances here presented. We perceive neither justification nor excuse for re-examination of the question, and must hold that the plaintiff is entitled to recover in view of the fact that the finding of the trial court exonerated plaintiff from any

fraudulent or intentional concealment of the conditional nature of his title to the truck.

"It is urged that the rule of *Bostwick v. Mutual L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, where knowledge of the contents of a life insurance policy was imputed to the insured when he attempted to repudiate the same several months after its receipt, should be here invoked to defeat plaintiff's recovery. It must be remembered that in that case the plaintiff was attempting to repudiate the policy and not to collect thereon."

The case of *Taluc v. Fall Creek Farmers Mut. F. Ins. Co., supra,* involved an attempt of a fire insurance company to avoid payment of loss on a policy on the ground that there were false statements of fact in the application. The application for the policy was made out in the handwriting of the insurance company's agent and was signed by the plaintiff insured without reading it. The agent made no inquiry as to the particular facts inserted therein which proved to be incorrect. The defendant contended that the plaintiff could not show that the misstatements in the application were due to the fault of the agent because the plaintiff had not read the application. This court in an opinion by Mr. Justice FAIRCHILD stated (p. 321):

"Every-day experience underlies the rule that it is not necessarily negligence for the applicant for insurance to fail to read the application or the policy and that misstatements inserted in the application by the agent without the knowledge of the assured do not become misrepresentations of the insured by reason of the fact that he signed the application. Ordinarily persons making contracts of insurance do not read carefully the application, and a very small per cent, in all probability, of those securing insurance ever read or understand the contents of the policy. Because of this fact the law has placed restrictions of an unusual nature, considering contracts as they are generally treated, upon the parties seeking to avoid the terms of a policy of insurance."

It is the general rule that one seeking to reform an instrument for mutual mistake must have exercised reasonable diligence. 76 C. J. S., Reformation of Instruments, p. 398, sec. 46. However, in *Barly v. Public Fire Ins. Co.* (1931), 203 Wis. 338, 234 N. W. 361, this court held that failure of an insured to read an automobile fire and theft insurance policy and to discover errors therein and advise the insurance company with respect thereto until after the insured vehicle had been stolen, did not bar the insured from his remedy of reformation of the policy to correct such errors. The rule in estoppel is the same as that in reformation, *i. e.,* that the party seeking to invoke it must have acted with reasonable diligence. We cannot perceive why a stricter rule with respect to exercise of reasonable diligence should be required of one seeking to invoke estoppel against an insurance company for the wrongful act of its agent than one who seeks to reform a policy for mistake. Why should failure to read a policy and notify an insurance company of mistake therein be held to be negligence in the one case and not in the other?

Does our decision in *Bradach v. New York Life Ins. Co.* (1952), 260 Wis. 451, 51 N. W. (2d) 13, impliedly overrule our prior decisions in *Collum v. National Fire Ins. Co., supra,* and *Taluc v. Fall Creek Farmers Mut. F. Ins. Co., supra?* We think not. The *Bradach Case* did not involve any attempt to invoke estoppel against the defendant life insurance company. In that case the plaintiff was the owner-beneficiary of a life insurance policy issued upon the life of his partner and sought to recover on the policy after the death of the insured. At the trial the company proved conclusively that the answers to certain portions of the medical portion of the application were materially false. After the conclusion of the taking of evidence the plaintiff contended the defendant company had failed in its proof because it had offered no evidence that the purported signature of the in-

sured to the application (which was attached to the policy) was genuine. We held that the burden of proving the genuineness of the signature to the application was not upon the defendant insurance company inasmuch as the insured had had the policy in his possession and it was his obligation to have read the policy and attached application and to have protested to the company if the signature were not genuine. We did not state in our opinion in the *Bradach Case* that it was negligence for the plaintiff not to have read the policy. Neither did we hold, that if the plaintiff had offered testimony that the purported signature of the insured to the application were a forgery, such failure of the owner· beneficiary to read the policy would have precluded him from offering such evidence. However, in order that there may be no misunderstanding, we expressly declare that the holding of the *Collum* and *Taluc Cases,* with respect to the failure of an insured to read his policy, is still the law in Wisconsin regardless of anything which may have been stated or cited in our opinion in the *Bradach Case* inconsistent therewith.

The defendant in the instant case has placed great reliance on our decision in *Moe v. Allemannia Fire Ins. Co.* (1932), 209 Wis. 526, 527, 244 N. W. 593, as requiring that the case at bar be decided in its favor. In that case the defendant insurance company's agent made out an application for fire insurance on plaintiff's household furniture, which application made no mention of the existence of a chattel mortgage on such furniture which had been placed thereon two months previously. Neither the agent nor the plaintiff knew that the existence of a chattel mortgage was material so far as the making of the contract of insurance was concerned. The policy contained a provision that the company should not be liable for any loss to the insured property "while incumbered by a chattel mortgage." This court held that there was no question of warranty involved but only a question of cov-

erage, and denied recovery to the plaintiff. No question of waiver or estoppel is discussed in the opinion and it therefore is not in point on such issue.

We are of the opinion that the fact that in the instant case Frese called the defendant's agent and told him to "transfer" the insurance from the first Cadillac to the second does not differentiate this case from one where the insured requests the writing of a new policy. To hold that Frese had the duty of first reading the fine-print exclusion clause in the existing policy, and, because of so reading it, to inform defendant's agent that the new car was mortgaged, does not seem to us to conform to realities and places the burden on the wrong party. The average owner, who acquires a new car in place of one previously owned, when he requests insurance coverage of his insurance agent does not know whether this can be accomplished by a rider to the old policy, or the writing of a new policy. Whichever way it is handled by the agent, the car owner depends on the agent to ask for whatever information is required by the insurance company for filling in blanks in the rider or the new policy. The insured should not be held to presume that the agent will fill in answers in such blanks without first making inquiry to ascertain the true facts.

The instant case is one in which a false answer was inserted in the policy through the sole fault of the defendant insurance company's agent. The principles of equity and fair dealing require that the company be not permitted to take advantage of the wrongful act of its own agent by showing that the fact as to incumbrances was other than as written into the policy by the agent.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment for the plaintiff against the defendant in the amount prayed for in plaintiff's complaint.

GEHL, J. (*dissenting*). We of the minority consider it unnecessary to labor through texts and the opinions of courts of other jurisdictions in search of the answer to the question presented upon this appeal. It is found in the policy which provides:

"This policy does not apply: . . .
"(b) Under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other incumbrance not specifically declared and described in this policy;"

and in *Moe v. Allemannia Fire Ins. Co.* 209 Wis. 526, 244 N. W. 593. The essential facts in the *Moe Case* are identical with those with which we have to deal. This court rejected the same contentions as are made here and said (p. 528):

"It is to be noted that sec. 209.06 applies only to statements, representations, or warranties made by the insured. No warranty or representation was made by the insured. He did not represent that the property was free from incumbrance. He did not warrant that it would remain so. He agreed that no property should be covered by the policy of insurance when in force which was incumbered by a chattel mortgage. This clause clearly relates to the extent of the coverage and not to the title of the property either at the time of the execution and delivery of the policy or thereafter. The insured simply agreed that any incumbered property shall not be within the terms of the policy. *Prentiss-Wabers S. Co. v. Millers Mut. Fire Ins. Asso.* (1927), 192 Wis. 623, 211 N. W. 776, 213 N. W. 632. The case of *Collum v. National Fire Ins. Co.* (1923), 181 Wis. 425, 195 N. W. 333, dealt with a warranty, not with a coverage clause of the contract. *Olson v. Herman Farmers Mut. Ins. Co.* 187 Wis. 15, 203 N. W. 743, dealt with a warranty and sec. 209.06 (1) was held to apply. It does not appear that sec. 209.06 has been overlooked in any case where applicable. Confusion arises because of the failure to distinguish between representations and warranties and agreements as to what

is covered. If there be a chattel mortgage upon the property or the property be subsequently incumbered, under the terms of the standard fire insurance policy that operates to remove the incumbered property from the protection afforded by the policy."

The rule of that case has not been abandoned until today; it has been consistently adhered to. *Fountain v. Importers & Exporters Ins. Co.* 214 Wis. 556, 252 N. W. 569; *Estreen v. Fire Asso. of Philadelphia,* 229 Wis. 494, 282 N. W. 573; *Straw v. Integrity Mut. Ins. Co.* 248 Wis. 96, 20 N. W. (2d) 707.

The assured in the *Fountain* and *Straw Cases* sought application of the doctrine of estoppel with respect to which more is said later. Apparently the court in its study of the four cases and the plaintiff in its effort in this case considered the doctrine of estoppel so beside the point as not to require treatment.

Each of the cases cited by the majority as authority for its conclusion on the main issue was decided before the *Moe Case.* The *Collum Case* upon which they rely principally did not escape the attention of the court when it considered the *Moe Case.* That appears from the foregoing quotation.

The majority also cite *Taluc v. Fall Creek Farmers Mut. F. Ins. Co.* 203 Wis. 319, 234 N. W. 364. The case is not in point. The only point decided there was that the trial court had erred in rejecting the assured's offer to prove that the insurer's agent had knowledge of the existence of an undeclared mortgage upon the property insured. In the instant case it is undisputed that the agent knew nothing of the existence of a mortgage on the car. If he had been shown to have had such knowledge the result would, of course, be different. What is said in the opinion in the *Taluc Case* with respect to the insured's duty or absence of duty to read his policy is pure dictum and is not the rule in this state as will be pointed out later in this opinion. It is worthy of note

that the court was made up of the same membership when the *Taluc* and the *Moe Cases* were considered.

It should be observed that *Vankirk v. Citizens' Ins. Co.* 79 Wis. 627, 48 N. W. 798, upon which the majority also rely was called to the attention of the court in the *Moe Case* in the brief of the appellant and, of course, we must assume that the court did not overlook it.

No reference is made in the opinion of the majority to the *Moe Case* except what is said in an effort to distinguish it upon the ground that "the instant case is one in which a false answer was inserted in the policy through the sole fault of the defendant insurance company's agent." The sole fault of the agent who knew nothing about the chattel mortgage and who was asked by Frese to transfer the policy from an unincumbered car to another which had been incumbered and to whom nothing was said by Frese as to the existence of a chattel mortgage upon the new car? The sole fault of the agent who, without notice from the only person who knew of the real fact, undoubtedly assumed when the transfer was applied for that, except for the description of the car, the new policy should contain provisions and recitals similar to those contained in that previously issued? After Frese bought the new car he called the defendant's agent on the telephone and "told him to transfer the insurance from the old car to the one I had just bought and he said he would do that." Was the defendant at fault when it issued the new policy in giving Frese just what he asked for,—either a rider or a new policy with no change in the policy provisions or its recitals except those which describe the car to be covered?

The majority also observe that no question of waiver or estoppel is discussed in the *Moe Case*. We believe that we have explained the reason for the omission.

We should not be required to continue discussion. The law applicable has been once declared and thrice affirmed. The

opinion of the majority closes with an attempt to invoke the principles of equity and fair dealing. To that we reply by quoting from the concurring opinion of Mr. Justice CURRIE in *Flamingo v. Waukesha,* 262 Wis. 219, 228, 55 N. W. (2d) 24:

"While this court has on a number of occasions criticized this rule of immunity applicable to municipal corporations as being archaic and not consistent with the principles of fundamental justice, nevertheless, we also have repeatedly declared that it is the function of the legislature and not of this court to abolish the rule."

There is stated a good rule to which we should adhere.

More must be said, however, because the majority reach for the doctrines of waiver and estoppel. Both the policy and a statute prescribe the exclusive method to be pursued to effectuate a waiver. The policy provides, ". . . nor shall the terms of this policy be waived or changed, except by indorsement issued to form a part of this policy." Sec. 203.01, Stats., requires that certain provisions be written into fire insurance policies. One provision required is that "No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. . . ." This court has had occasion to consider a similar statutory provision. In *Spohn v. National Fire Ins. Co.* 190 Wis. 446, 451, 209 N. W. 725, it said:

"These provisions are plain and explicit. They cover the subject of waiver and prescribe the method which must be pursued in order to effectuate a waiver. . . . A policy of insurance is a contract between the insurer and the insured, and the provisions thereof are binding upon both parties unless such provisions are legally waived or the contract is modified in the manner provided by the terms of the policy. Under these provisions of the standard policy, the policy becomes void if any change takes place in the interest, title, or possession of the subject of the insurance, unless such

change is contained in a written agreement added to the policy. . . ."

In considering a similar policy provision, the court in *Stillman v. North River Ins. Co.* 192 Wis. 204, 206, 212 N. W. 67, said:

"According to the terms of the policy this [forfeiture] provision could not be waived by anyone unless the waiver be in writing and added to the policy. It is well settled in this state that such a provision cannot be waived except in the manner expressly provided."

In *Frozine v. St. Paul F. & M. Ins. Co.* 195 Wis. 494, 496, 218 N. W. 845, the court, quoting from several earlier cases, said:

"It has been ruled many times that policies of insurance are to be liberally construed in favor of the insured because the insurer has prepared the contract. This reason for such construction would seem to drop out in case of a contract prescribed in its details by statute, at least so far as the statute covered such details. . . .
"While every reasonable inference should be made to sustain insurance written and accepted in good faith, that does not mean that facts should be distorted and unnatural and unreasonable inferences resorted to." See also *Straw v. Integrity Mut. Ins. Co., supra.*

The majority seeks to avoid the provisions of the policy and the statute by construing them as not applying to the act of the agent. This action is based upon contract. The obligation of the defendant is determined by its terms and by the provisions of the statute, both of which provide that the terms of the policy may be waived in only one way. Neither contemplates that waiver of its terms may be accomplished by the act or omission, lacking fraud, of course, of either of the parties to the contract or their agents.

But, say the majority, regardless of whether the doctrine of waiver may be invoked, that of estoppel is applicable.

True, there are circumstances under which it has been held that while the provisions of a policy prescribe the exclusive method by which waiver may be effected, yet the doctrine of equitable estoppel is available to the assured. *Welch v. Fire Asso.* 120 Wis. 456, 98 N. W. 227, so indicated. The court discussed the distinction between waiver and estoppel as applied to insurance contracts. But it was careful to point out that for the application of the doctrine of estoppel it must appear that at the inception of the contract the insurer had knowledge of the circumstances affecting the force of the applicable provisions of the contract. There are numerous cases in which the court has held that the insurer is, under the circumstances there appearing, estopped to assert the defense of forfeiture. But we find none in which it has been held that estoppel may be asserted by the assured where the insurer had no knowledge of the facts or circumstances which would operate as a forfeiture. None of them dealing with the subject can be construed as in conflict with the rule that "it is essential that the acts relied on as indicative of a waiver shall have been done by the insurer with full knowledge of the facts giving it a right to treat the policy as unenforceable." 29 Am. Jur., Insurance, p. 610, sec. 806.

No one concerned with the transaction involving the issuance of the policy in question had knowledge of the fact that the automobile was incumbered except the assured. No one except he knew that the statement in the policy that the car was unincumbered was erroneous.

It is, of course, true that he did not actually know of the erroneous statement; he was, however, charged with knowledge of the fact, he was bound to know of the error and of the policy and statutory provisions that the forfeiture by the insurer could be effectuated in only one way. He cannot rely upon defendant's error.

From *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, down to *Bradach v. New*

*York Life Ins. Co.* 260 Wis. 451, 51 N. W. (2d) 13, this court has consistently held that an insured must read his policy within a reasonable time after it is received by him, and that he is bound by its terms. If he had read the policy before the car was destroyed by fire Frese would have discovered the erroneous statement as well as the provision which precludes recovery in the event the car be incumbered by an undeclared mortgage.

It is suggested that *Barly v. Public Fire Ins. Co.* 203 Wis. 338, 234 N. W. 361, is authority for the proposition that the doctrine of estoppel might operate against the claim of the defendant insurance company. The distinction between the *Barly Case* and the instant case is that the former was an action for reformation of the policy. That distinction and the reason therefore are pointed out in the opinion written by Mr. Justice CURRIE in the *Bradach Case*. An entirely different situation might exist here if this were an action for reformation of the policy. In such an action reformation might be granted upon the ground that a mutual mistake was made by Frese and the company's agent which resulted in the insertion in the policy of the erroneous statement. This is not an action for reformation, however, and the rule of the *Bostwick Case,* which has been cited with approval many times by this court, must be held to apply so as to estop Frese to assert the claim that his insurer is estopped to deny recovery.

It is true as the majority say: "We did not state in our opinion in the *Bradach Case* that it was negligence for the plaintiff not to have read the policy." We did say, however, at page 455, that the assured "is bound as a matter of law to examine the policy within a reasonable time after it is received by him." If it be conceded that such failure does not constitute negligence, certainly it does not follow that the assured is in better position because he has violated the duty which he owes as a matter of law to read his policy.

Assuming that upon some theory as, for instance, because the agent did not inquire of Frese as to the existence of incumbrances, it might be claimed that the defendant is estopped to assert the defense of forfeiture, still Frese is met with the rule that—

". . . one party to a transaction may be denied the right to assert an estoppel against the other party by reason of certain facts which create an estoppel against himself. The doctrine applied in this situation is characterized as one of counterestoppel or estoppel against estoppel. The effects of such doctrine are that two estoppels may destroy each other or, as otherwise expressed, one estoppel may set another at large, and that one party cannot rely on an estoppel when he, and he alone, is responsible for facts which constitute the estoppel." 19 Am. Jur., Estoppel, p. 810, sec. 154.

Frese's old automobile was unincumbered and the insurance policy on it so described it. He testified, "I had insurance on the old Cadillac and when I bought the new car I called Mr. Cundy and told him to transfer the insurance from the old car to the one I had just bought and he said he would do that."

It appears to me that if the circumstances of ownership were not the same in the new car as in the old so as to affect the coverage, Frese alone knew it and it was his responsibility to inform the agent. Without such information neither the agent nor the principal can be charged with the knowledge or with acting recklessly without knowledge in obeying Frese's instructions. It was Frese, in ordering a transfer, who took upon himself the responsibility of determining that the terms of his old policy met his new needs. He may not complain because the agent filled his order. Frese's mistake was an innocent one but its unfortunate result may not be shifted to the agent (or his principal) who did as Frese directed.

I would affirm. I am authorized to state that Mr. Justice BROWN joins in this dissent.